**CLEARY GIACOBBE ALFIERI JACOBS LLC**
50 Division Street; Suite 501
Somerville, NJ  08876
732-583-7474
Richard A. Gantner, Esq.
rgantner@cgajlaw.com

**TESSER | GROSSMAN LLP**
11990 San Vicente Boulevard, Suite 300
Los Angeles, California 90049
Telephone: (310) 207-4558
BRANDON M. TESSER (SBN 168476)
brandon@tessergrossman.com
Attorneys for Plaintiff
ELOHIM EPF USA, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELOHIM EPF USA, INC., a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> 162 D & Y CORP., a New York corporation d/b/a FLOWER KARAOKE; DONG HYUN HA, an individual; MANHATTAN ZILLER ZILLER, INC., a New York corporation d/b/a K2 KARAOKE; YURIND LEE, an individual; Y & P BAYSIDE CORP., a New York corporation d/b/a HAPPY KARAOKE; PHIL SOOK CHO, an individual; SING SING BELL, INC., a New York corporation d/b/a CHRISTMAS KARAOKE; JIN E AN, an individual; MUSICBOX KTV, INC., a New York corporation d/b/a MUSIC BOX K-TV; ANTHONY KIM, an individual; M & S MUSIC STUDIO, INC., a New York corporation d/b/a GAGOPA KARAOKE; HYE KYUNG HAN, an individual; SS NOBLESSE HOUSE. INC.. a New York | Case No.: <br><br> **COMPLAINT FOR** <br><br> 1. **DIRECT COPYRIGHT INFRINGEMENT;** <br> 2. **CONTRIBUTORY COPYRIGHT INFIRNGEMENT** <br> 3. **VICARIOUS COPYRIGHT INFRINGEMENT;** <br> 4. **INDUCING COPYRIGHT INFRINGEMENT** <br><br> **JURY DEMAND** |

---

**COMPLAINT**

- 1 -

corporation d/b/a NOBLESSE HOUSE; )
YINGHUA HUANG, an individual;     )
PLACE OF HAPPY & LUCKY INC.,      )
a New York corporation d/b/a THE  )
KING KARAOKE; GUNHA SONG, an      )
individual; NORAE HAHNUN JIB      )
CORP., a New York corporation d/b/a )
OPEN KARAOKE; DONG HYUN           )
HA, an individual; BIZMAX NY, INC., )
a New York corporation d/b/a WOW   )
KARAOKE; LI BEOM KIM, an          )
individual; HARMONY KARAOKE       )
KTV, INC., a New York corporation  )
d/b/a HARMONY KARAOKE;            )
JOSEPH N. ZOINO, an individual;    )
SWEETIE & VIP, INC., a New York    )
corporation d/b/a I LUV LUXURY     )
ROOM; KYUNG A. CHUNG, an          )
individual; YS2 ENTERPRISES, INC., )
a New York corporation d/b/a CEO   )
BUSINESS CLUB; HYUN HAK YI,        )
an individual; EUNSIK SUN, an      )
individual; G S GLOBAL CORP, a     )
New York corporation d/b/a RED;    )
DAVID RHEE , an individual;        )
SOMETHING 1, INC., a New York      )
corporation d/b/a SOMETHING;       )
SUNNY TAE KIM, an individual;      )
SAGWA NAMOO, INC., a New York      )
corporation d/b/a SAGWA NAMOO;     )
KYUNG SOON NAM, an individual;     )
TOMATO 162, INC., a New York       )
corporation d/b/a TOMATO           )
KARAOKE ROOM; SUNG LAW             )
KIM, an individual; and DOES 1     )
through 20, inclusive              )
                                   )
            Defendants.            )
                                   )
_____ )

Plaintiff Elohim EPF, USA, Inc. alleges as follows:


# I

## JURISDICTION

1.      This court has subject matter jurisdiction over this action because it

arises under the laws of the United States, 28 U.S.C. § 1331, more particularly,

---

**COMPLAINT**

because it arises under an Act of Congress relating to copyrights, 28 U.S.C. § 1338, namely, the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.*

## II

## VENUE

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(a), in that all of the defendants, or their agents, reside or may be found in the district.

3.      Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) in that either: (1) one or more defendants reside in this district, and all defendants reside in this state; (2) a substantial part of the events or omissions giving rise to the claim occurred in this district; or (3) at least one defendant resides in this district, if there is no district in which the action may otherwise be brought.

## III

## PARTIES

4.      Plaintiff ELOHIM EPF USA, INC. ("Elohim") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in La Habra, California.  Elohim is the United States sub-publisher for a substantial number of music publishers in the Republic of Korea ("Korea") and, as such, controls the right to license compositions for those publishers in the United States.

5.      Defendant 162 D & Y CORP. ("D & Y") is a limited liability company duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York.  D & Y operates, maintains and controls an establishment known as FLOWER KARAOKE

("FLOWER") located at 162-05 Crocheron Avenue, Flushing, New York 11358, in this district. FLOWER contains and operates karaoke machine(s) on its premises.  D & Y has a direct financial interest in FLOWER.

6.     Defendant DONG HYUN HA is, upon information and belief, a resident of Queens County, and the Chief Executive Officer of D & Y. Upon information and belief, DONG HYUN HA directs, controls and ratifies the operation and management of D & Y d/b/a FLOWER, and has a direct financial interest in D & Y d/b/a FLOWER.  DONG HYUN HA is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

7.     Defendant     MANHATTAN     ZILLER     ZILLER,     INC. ("MANHATTAN ZILLER") is a corporation duly licensed and existing under the laws of the State of New York, with its principal place of business in New York, New York.  MANHATTAN ZILLER operates, maintains and controls an establishment known as K2 KARAOKE ("K2 KARAOKE") located at 2 W. 32nd Street, New York, NY 10001.  K2 KARAOKE contains and operates karaoke machine(s) on its premises. MANHATTAN ZILLER has a direct financial interest in K2 KARAOKE.

8.     Defendant YURIND LEE is, upon information and belief, a resident of New York County, and the Chief Executive Officer of MANHATTAN ZILLER.  Upon information and belief, YURIND LEE directs, controls and ratifies the operation and management of MANHATTAN ZILLER d/b/a K2 KARAOKE, and has a direct financial interest in MANHATTAN ZILLER d/b/a K2 KARAOKE.  YURIND LEE is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

9.      Defendant Y & P BAYSIDE CORP. ("Y & P BAYSIDE") is a corporation duly licensed and existing under the laws of the State of New York, with its principal place of business in Bayside, New York.  Y & P BAYSIDE operates, maintains and controls an establishment known as HAPPY KARAOKE ("HAPPY KARAOKE") located at 160-30 Northern Boulevard, Flushing, New York 11358, in this district. HAPPY KARAOKE contains and operates karaoke machine(s) on its premises.  Y & P BAYSIDE has a direct financial interest in HAPPY KARAOKE.

10.     Defendant PHIL SOOK CHO is, upon information and belief, a resident of Queens County, and the Chief Executive Officer of Y & P BAYSIDE.  Upon information and belief, PHIL SOOK CHO directs, controls and ratifies the operation and management of Y & P BAYSIDE d/b/a HAPPY KARAOKE, and has a direct financial interest in Y & P BAYSIDE d/b/a HAPPY KARAOKE.  PHIL SOOK CHO is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

11.     Defendant SING SING BELL, INC. ("SING SING BELL") is a corporation duly licensed and existing under the laws of the State of New York, with its principal place of business in Bayside, California.  SING SING BELL operates, maintains and controls an establishment known as CHRISTMAS KARAOKE ("CHRISTMAS KARAOKE") located at 47-29 Bell Boulevard, Bayside, New York, New York 11361, in this district. CHRISTMAS KARAOKE contains and operates karaoke machine(s) on its premises.  SING SING BELL has a direct financial interest in CHRISTMAS KARAOKE.

12.     Defendant JIN E AN is, upon information and belief, a resident of Queens County, and the Principal and/or Majority Owner of SING SING BELL.  Upon information and belief, JIN E AN directs, controls and ratifies the

operation and management of SING SING BELL d/b/a CHRISTMAS KARAOKE, and has a direct financial interest in SING SING BELL d/b/a CHRISTMAS KARAOKE.   JIN E AN is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

13.   Defendant MUSICBOX KTV, INC. ("MUSICBOX") is a corporation duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York.   MUSICBOX operates, maintains and controls an establishment known as MUSIC BOX K-TV ("MUSIC BOX K-TV") located at 40-15 150st Queens, New York 11354, in this district. MUSIC BOX K-TV contains and operates karaoke machine(s) on its premises.   MUSICBOX has a direct financial interest in MUSIC BOX K-TV.

14.   Defendant ANTHONY KIM is, upon information and belief, a resident of Queens County, and the Principal and/or Majority Owner of MUSICBOX.   Upon information and belief, ANTHONY KIM directs, controls and ratifies the operation and management of MUSICBOX d/b/a MUSIC BOX K-TV, and has a direct financial interest in MUSICBOX d/b/a MUSIC BOX K-TV.   ANTHONY KIM is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

15.   Defendant M & S MUSIC STUDIO, INC. ("M & S MUSIC STUDIO") is a corporation duly licensed and existing under the laws of the State of New York, with its principal place of business in New York, New York.   M & S MUSIC STUDIO operates, maintains and controls an establishment known as GAGOPA KARAOKE ("GAGOPA KARAOKE") located at 28 W. 32nd Street, 3rd Floor, New York, New York 10001, in this district. GAGOPA KARAOKE contains and operates karaoke machine(s) on its

premises.  M & S MUSIC STUDIO has a direct financial interest in GAGOPA KARAOKE.

16.     Defendant HYE KYUNG HAN is, upon information and belief, a resident of New York County, and the Principal and/or Majority Owner of M & S MUSIC STUDIO.  Upon information and belief, HYE KYUNG HAN directs, controls and ratifies the operation and management of M & S MUSIC STUDIO d/b/a GAGOPA KARAOKE, and has a direct financial interest in M & S MUSIC STUDIO d/b/a GAGOPA KARAOKE.  HYE KYUNG HAN is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

17.     Defendant SS NOBLESSE HOUSE, INC. ("SS NOBLESSE HOUSE") is a corporation duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York.  SS NOBLESSE HOUSE operates, maintains and controls an establishment known as NOBLESSE HOUSE ("NOBLESSE HOUSE") located at 149-38 41st Avenue, Flushing, New York 11355, in this district. NOBLESSE HOUSE contains and operates karaoke machine(s) on its premises.  SS NOBLESSE HOUSE has a direct financial interest in NOBLESSE HOUSE.

18.     Defendant YINGHUA HUANG is, upon information and belief, a resident of Queens County, and the Principal and/or Majority Owner of SS NOBLESSE HOUSE.  Upon information and belief, YINGHUA HUANG directs, controls and ratifies the operation and management of SS NOBLESSE HOUSE d/b/a NOBLESSE HOUSE, and has a direct financial interest in SS NOBLESSE HOUSE d/b/a NOBLESSE HOUSE.  YINGHUA HUANG is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

---

**COMPLAINT**

19.     Defendant PLACE OF HAPPY & LUCKY INC. ("HAPPY & LUCKY") is a corporation duly licensed and existing under the laws of the State of New Jersey, with its principal place of business in Flushing, New York. HAPPY & LUCKY operates, maintains and controls an establishment known as THE KING KARAOKE ("KING KARAOKE") located at 34-36 Union Street, Flushing, New York 11354, in this district. HAPPY & LUCKY contains and operates karaoke machine(s) on its premises.  HAPPY & LUCKY has a direct financial interest in KING KARAOKE.

20.     Defendant GUNHA SONG is, upon information and belief, a resident of Queens County, and the Owner of HAPPY & LUCKY.  Upon information and belief, GUNHA SONG directs, controls and ratifies the operation and management of HAPPY & LUCKY d/b/a KING KARAOKE and has a direct financial interest in HAPPY & LUCKY d/b/a KING KARAOKE. GUNHA SONG is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

21.     Defendant NORAE HAHNUN JIB CORP. ("NORAE HAHNUN JIB") is a corporation duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York. NORAE HAHNUN JIB operates, maintains and controls an establishment known as OPEN KARAOKE ("OPEN KARAOKE") located at 40-20 149th Place, Flushing, New York 11354, in this district. Open Karaoke contains and operates karaoke machine(s) on its premises.  NORAE HAHNUN JIB has a direct financial interest in OPEN KARAOKE.

22.     Defendant DONG HYUN HA is, upon information and belief, a resident of Queens County, and the Chief Executive Officer of NORAE HAHNUN JIB.  Upon information and belief, DONG HYUN HA directs,

controls and ratifies the operation and management of NORAE HAHNUN JIB d/b/a OPEN KARAOKE, and has a direct financial interest in NORAE HAHNUN JIB d/b/a OPEN KARAOKE.  DONG HYUN HA is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

23.     Defendant BIZMAX NY, INC. ("BIZMAX NY") is a corporation duly licensed and existing under the laws of the State of New York, with its principal place of business in New York, New York.  BIZMAX NY operates, maintains and controls an establishment known as WOW KARAOKE ("WOW KARAOKE") located at 10 W. 32nd Street, 4th Floor, New York, New York 10001, in this district. WOW KARAOKE contains and operates karaoke machine(s) on its premises.  BIZMAX NY has a direct financial interest in WOW KARAOKE.

24.     Defendant LI BEOM KIM is, upon information and belief, a resident of New York County, and the Chief Executive Officer of BIZMAX NY.  Upon information and belief, LI BEOM KIM directs, controls and ratifies the operation and management of BIZMAX NY d/b/a WOW KARAOKE, and has a direct financial interest in BIZMAX NY d/b/a WOW KARAOKE is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

25.     Defendant HARMONY KARAOKE KTV, INC. ("HARMONY KARAOKE KTV") is a corporation duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York.  HARMONY KARAOKE KTV operates, maintains and controls an establishment known as HARMONY KARAOKE ("HARMONY KARAOKE") located at 41-13 150th Street, Flushing, New York 11355, in this

district. HARMONY KARAOKE contains and operates karaoke machine(s) on its premises. HARMONY KARAOKE KTV has a direct financial interest in HARMONY KARAOKE.

26.     Defendant JOSEPH N. ZOINO is, upon information and belief, a resident of Queens County, and the Principal and/or Majority Owner of HARMONY KARAOKE KTV.  Upon information and belief, JOSEPH N. ZOINO directs, controls and ratifies the operation and management of HARMONY KARAOKE KTV d/b/a HARMONY KARAOKE, and has a direct financial interest in HARMONY KARAOKE KTV d/b/a HARMONY KARAOKE.  JOSEPH N. ZOINO is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

27.     Defendant SWEETIE & VIP, INC. ("SWEETIE & VIP") is a limited liability company duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York. SWEETIE & VIP operates, maintains and controls an establishment known as I LUV LUXURY ROOM CAFÉ ("I LUV") located at 161-22 Northern Boulevard, Flushing, New York 11358, in this district. I LUV contains and operates karaoke machine(s) on its premises.  SWEETIE & VIP has a direct financial interest in I LUV.

28.     Defendant KYUNG A. CHUNG is, upon information and belief, a resident of Queens County, and the Chief Executive Officer of SWEETIE & VIP.  Upon information and belief, KYUNG A. CHUNG directs, controls and ratifies the operation and management of SWEETIE & VIP d/b/a I LUV, and has a direct financial interest in SWEETIE & VIP d/b/a I LUV.  KYUNG A. CHUNG is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

29.    Defendant YS2 ENTERPRISES, INC. ("YS2 ENTERPRISES") is a limited liability company duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York. YS2 ENTERPRISES operates, maintains and controls an establishment known as CEO BUSINESS CLUB ("CEO BUSINESS CLUB") located at 154-05 Northern Boulevard, 2nd Floor, Flushing, New York 11354, in this district. CEO BUSINESS CLUB contains and operates karaoke machine(s) on its premises. YS2 ENTERPRISES has a direct financial interest in CEO BUSINESS CLUB.

30.    Defendants HYUN HAK YI and EUNSIK SUN are, upon information and belief, residents of Queens County, and the Principals and/or Majority Owners of CEO BUSINESS CLUB.  Upon information and belief, HYUN HAK YI and EUNSIK SUN direct, control and ratify the operation and management of YS2 ENTERPRISES d/b/a CEO BUSINESS CLUB, and has a direct financial interest in YS2 ENTERPRISES d/b/a CEO BUSINESS CLUB. HYUN HAK YI and EUNSIK SUN are the moving forces behind the infringing activity alleged herein and are personally liable for such infringement.

31.    Defendant G S GLOBAL CORP ("G S GLOBAL") is a limited liability company duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York.  G S GLOBAL operates, maintains and controls an establishment known as RED ("RED") located at 161-21 Crocheron Avenue, Flushing, New York 11358, in this district. RED contains and operates karaoke machine(s) on its premises.  G S GLOBAL has a direct financial interest in RED.

32.    Defendant DAVID RHEE is, upon information and belief, a resident of Queens County, and the Principal and/or Majority Owner of G S GLOBAL.  Upon information and belief, DAVID RHEE directs, controls and

ratifies the operation and management of G S GLOBAL d/b/a RED, and has a direct financial interest in G S GLOBAL d/b/a RED.  DAVID RHEE is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

33.    Defendant SOMETHING 1, INC. ("SOMETHING 1") is a limited liability company duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York. SOMETHING 1 operates, maintains and controls an establishment known as SOMETHING ("SOMETHING") located at 161-19 Crocheron Avenue, Flushing, New York 11358, in this district. SOMETHING contains and operates karaoke machine(s) on its premises.  SOMETHING 1 has a direct financial interest in SOMETHING.

34.    Defendant SUNNY TAE KIM is, upon information and belief, a resident of Queens County, and the Principal and/or Majority Owner of SOMETHING 1.  Upon information and belief, SUNNY TAE KIM directs, controls and ratifies the operation and management of SOMETHING 1 d/b/a SOMETHING, and has a direct financial interest in SOMETHING 1 d/b/a SOMETHING.  SUNNY TAE KIM is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

35.    Defendant SAGWA NAMOO, INC. ("SAGWA NAMOO") is a limited liability company duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York. SAGWA NAMOO operates, maintains and controls an establishment known as SAGWA NAMOO ("SAGWA") located at 162-07 Depot Road, Flushing, New York 11358, in this district. SAGWA contains and operates karaoke machine(s) on its premises.  SAGWA NAMOO has a direct financial interest in SAGWA.

36.     Defendant KYUNG SOON NAM is, upon information and belief, a resident of Queens County, and the Principal and/or Majority Owner of SAGWA NAMOO.   Upon information and belief, KYUNG SOON NAM directs, controls and ratifies the operation and management of SAGWA NAMOO d/b/a SAGWA, and has a direct financial interest in SAGWA NAMOO d/b/a SAGWA.  KYUNG SOON NAM is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

37.     Defendant TOMATO 162, INC. ("TOMATO 162") is a limited liability company duly licensed and existing under the laws of the State of New York, with its principal place of business in Flushing, New York.  TOMATO 162 operates, maintains and controls an establishment known as TOMATO KARAOKE ROOM ("TOMATO KARAOKE") located at 41-18 162nd Street, Flushing, New York 11358, in this district. TOMATO KARAOKE contains and operates karaoke machine(s) on its premises.   TOMATO 162 has a direct financial interest in TOMATO KARAOKE.

38.     Defendant SUNG LAW KIM is, upon information and belief, a resident of Queens County, and the Principal and/or Majority Owner of TOMATO 162.  Upon information and belief, KYUNG SOON NAM directs, controls and ratifies the operation and management of TOMATO 162 d/b/a TOMATO KARAOKE, and has a direct financial interest in TOMATO 162 d/b/a TOMATO KARAOKE.  SUNG LAW KIM is the moving force behind the infringing activity alleged herein and is personally liable for such infringement.

39.     All of the aforementioned Defendants, and Doe defendants, when referred to collectively herein, shall be referred to as "Defendants."   The

establishments that contain and operate karaoke machine(s) on their premises, when referred to collectively herein, shall be referred to as "Karaoke Establishments."

12.    All Defendants are joined pursuant to Fed. R. Civ. P. 20(a)(2).

13.    Each of the Defendants publicly performs musical compositions and/or causes musical compositions to be publicly performed in connection with the operation of the Karaoke Establishments.

14.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1-20, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities when ascertained.  Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously-named Defendants is responsible in some manner or capacity for the wrongful conduct alleged herein, and that Plaintiff's loss as alleged herein was proximately and/or directly caused by such Defendants' acts.

15.    All of the claims for copyright infringement joined in this Complaint are governed and arise from or relate to the same transaction or occurrence, or series of transactions or occurrences, and one or more questions(s) of law or fact are common to all the parties.  In particular, Plaintiff alleges that Defendants have infringed Plaintiff's copyrights by performing or causing the performance of Plaintiff's musical compositions without authorization.  Thus, joinder of these claims will promote the convenient administration of justice and will avoid a multiplicity of separate, similar actions against Defendants.

# IV

## FACTS COMMON TO ALL CLAIMS

### Elohim EPF, USA, Inc.

16.    Commencing on or about July 1, 2013 and continuing through the present, Elohim has been and continues to be the exclusive "Subpublisher" in the United States and Canada of thousands of well-known and popular Korean music compositions (for a small number of these songs, Elohim acts as the publisher).  These thousands of songs are referred to collectively herein as the "Compositions."

17.    A "Subpublisher" is a term of art in the music publishing industry, which means a person or entity that has received from the copyright owner(s) or various musical compositions a grant of the exclusive right in one (1) or more countries of the world to "Administer" such musical compositions.   In the music publishing industry, a "publisher" differs from a "Subpublisher" in that the copyright owner usually grants the "publisher" the exclusive right to Administer musical compositions throughout the world, whereas a copyright owner usually grants one (1) or more "Subpublishers" the exclusive right to Administer musical compositions for a territory less than the entire world.

18.    "Administer" is a term of art in the music publishing industry which means the right to license and grant all rights in the applicable musical compositions (and their copyrights), and to collect all monies earned in connection with such musical compositions.

19.    Accordingly, pursuant to the terms of the Subpublishing agreements (or in certain specified instances, the publishing agreements) between Elohim and the copyright holders of the Compositions, Elohim registered certain Compositions with the U.S. Copyright Office (hereinafter

collectively the "Registered Compositions"). Although Plaintiff contends that Defendants have infringed Plaintiff's rights in all of the Compositions, this lawsuit concerns only the following Registered Compositions:

1. Jeong Sin I Na Gat Eot Na Bwa (PA 1-964-031)

2. Tteol Eo Jinda Nun Mul-I (PA 2-040-5479)

3. Go Hae (SR0000740303)

4. Gin Sang Meo Ri Geu Nyeo (SR0000733789)

5. Ma Boy (SR0000735001)

6. So Cool (SR0000735000)

7. Push Push (SR0000735000)

8. Gu Dae Wa Ham Ke (SR0000734414)

9. Neo Man Ul Nu Ki Myeo (SR0000734414)

10. Baramkyul (PA 2-028-619)

11. Sa Rang A (PA 1-964-033)

12. Ibyeol-Eun Sarang Dwileul Ttalawa (PA 2-028-639)

13. Ga Sum A-Pa Do (PA0001964037)

14. Hoe Sang (PA 2-040-867)

15. Sal Man Jji Go (PA 2-040-538)

16. Gondrae Mandrae (PA0001964047)

17. It Ji Mal A Yo (PA0001963957)

18. Kong Kak Ji (PA0001964035)

19. Ni Kka Jit Ge (SR0000735000)

20. Ga Sik Girl (SR0000735000)

21. Bae A Pa (SR0000733789)

22. Gil Eul Geot Da Ga (SR0000733789)

23. Sa Rang Ha Go Sip Eo (SR0000733789)

24. Love Attack (SR0000751707)

25. Hot Boy_Big Star (PA 2-028-617)

20. Elohim is the exclusive owner of the United States copyright in and to the Registered Compositions.

21. During all periods relevant to this action, Elohim has had and continues to have the exclusive rights in the copyright under the Copyright Act to the Registered Compositions, including a) the exclusive right to reproduce the Registered Compositions in copies or phonorecords (17 U.S.C. § 106(1)); b) the exclusive right to prepare derivative works based on the Registered Compositions (17 U.S.C. § 106(2)); c) the exclusive right to distribute copies or phonorecords of the Registered Compositions in the public by sale, rental, lease or lending (17 U.S.C. § 106(3)); d) the exclusive right to perform the Registered Compositions publicly (17 U.S.C. § 106(4)); and e) the exclusive right to *display* the Registered Compositions publicly (17 U.S.C. § 106(5)).

22. Within the past three years Defendants have, in the Karaoke Establishments, publicly performed and displayed and/or caused the public performance and display or, the Registered Compositions by means of karaoke machines, video monitors and sound systems.

1

**Defendants**

2      23.    Karaoke, which means "empty orchestra" in Japanese, is a multi-

3  million dollar business.  Karaoke recordings are re-recordings of hit songs with

4  the lead vocal tracks either omitted (instrumental) or sung by sound-alike artists

5  (learning track).  Lyrics are usually displayed on a video screen, along with a

6  moving symbol,

7  changing color, or music video image as a "prompt" to guide the singer in

8  singing-along with the track.

9      24.    According to public records, since on or about April 2017,

10  Defendants have, and continue to, own and operate various so-called "karaoke

11  bars" in the city of Santa Clara. Defendants charge customers money for access

12  to the many karaoke machines that Defendants have placed in the Karaoke

13  Establishments described herein.  The karaoke machines, and the interaction of

14  the customers with those machines, are the primary features of the experience

15  for which customers pay Defendants.  Without karaoke music, Defendants

16  would not be able to operate their businesses *at all*, and would earn no revenue;

17  karaoke music is Defendants' stock-in-trade.

18      25.    Upon entering a Karaoke Establishment, one of Defendants'

19  employees will assign patrons to one of the multiple individual karaoke rooms

20  located therein.  In these individual karaoke rooms, Defendants have set up a

21  karaoke machine, video monitor, and sound system (e.g., speakers, amplifier

22  and microphone) such that patrons can access and perform the musical

23  compositions pre-recorded onto the karaoke machines, which compositions

24  include the Registered Compositions.  Within each room there is also a binder

25  that lists all of the karaoke musical compositions (i.e., songs) by name and

26  number, for selection by customers, and which include the Registered

27

28

Compositions.   After a patron selects a certain musical composition, the instrumental music for the composition is played over the sound system, while concurrently a video monitor displays the lyrics for the musical composition so that the patron can sing along.

26.   A fundamental legal requirement for publicly performing copyrighted musical compositions embodied in karaoke recordings is a license granting the right of public performance, which must be obtained from the owner and/or administrator of the copyright of the musical compositions to be performed.  In addition, the public visual display of song lyrics on the video monitors of the karaoke machines enjoys independent copyright protection, and thereby requires a separate license granting the right of display, which must also be obtained from the owner and/or administrator of the musical compositions.

27.   Here, Plaintiff has not granted Defendants the right to publicly perform or publicly display any of the Compositions.  Moreover, Defendants have known that their continued public performance and public display of each of the Compositions constituted copyright infringement prior to the initiation of this action because Plaintiff sent cease and desist letters to Defendants. In addition, Plaintiff has made public announcements regarding such infringing conduct by Karaoke Establishments in order to educate them about such infringement, and urge them to stop, or acquire appropriate licenses. Thus, despite Defendants' knowledge that they lacked authorization to publicly perform or publicly display the Compositions, Defendants knowingly, willfully and intentionally continued their extensive use of each of the Compositions in their respective Karaoke Establishments and failed to pay Elohim for the right to publicly perform and publicly display each of the Compositions as required by 17 U.S.C. §§ 106(4) and (5).

### FIRST CLAIM FOR RELIEF FOR
### COPYRIGHT INFRINGEMENT
### (Against All Defendants)

28.    Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 27, hereinabove, inclusive, as though set forth at length herein.

29.    As set forth in detail above, Elohim is the copyright owner of the Registered Compositions and has the exclusive right to grant licenses for the public performance and public display of the Registered Compositions in the territory of the United States.

30.    Since the inception of the Karaoke Establishments, Defendants have publicly performed and publicly displayed, and/or caused or authorized the public performance and public display, of each of the Registered Compositions by means of one or more karaoke machines and through elaborate and expensive sound systems and video monitors.  Each of the public performances and public displays of the Compositions has been conducted without a license or authorization from Plaintiff.

31.    Thus, Defendants have knowingly and intentionally authorized, caused, and engaged in the unlicensed public performance and public display of each of the Registered Compositions in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106(4) and (5).

32.    On information and belief, Defendants' unlawful conduct has continued since the inception of the Karaoke Establishments on a nightly basis and on such numerous occasions that recounting each specific instance of infringement is impossible.

33.    Each unauthorized public performance of each of the Registered Compositions constitutes a separate and distinct act of direct copyright infringement.

34.    Each unauthorized public display of each of the Registered Compositions constitutes a separate and distinct act of direct copyright infringement.

35.    The specific acts of copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.  By continuing to provide unauthorized public performances and public displays of each of the Registered Compositions at their Karaoke Establishments, Defendants  threaten to continue committing copyright infringement on essentially a daily basis.  Unless this Court restrains Defendants
from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

36.    Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines.

37.    Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' direct infringement of Plaintiff's copyrights, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the Registered Compositions infringed.  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the Registered Compositions as will be proven at trial.

38.     Plaintiff is also entitled to recover attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

### SECOND CLAIM FOR RELIEF FOR
### CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against All Defendants)

39.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 38, hereinabove, inclusive, as though set forth at length herein.

40.     As set forth in detail above, Elohim is the copyright owner of the Registered Compositions and has the exclusive right to grant licenses for the public performance and public display of the Registered Compositions in the territory of the United States.

41.     Defendants charge patrons money to access the karaoke machines that Defendants have placed in the Karaoke Establishments.   Patrons pay Defendants an hourly rate for access to one of Defendants' rooms, wherein patrons are provided the opportunity and ability to cause the public performance and public display of each of the Registered Compositions without a license. The sole purpose of the individual rooms is to provide patrons with a space to publicly perform and publicly display musical compositions (including the Registered Compositions) in the karaoke machines, and to charge patrons for such use.

42.     By providing patrons the space and ability (i.e., by furnishing the individual rooms with a karaoke machine, video monitor and sound system to play recordings of the musical compositions and display their lyrics) to publicly perform and to publicly display each of the Registered Compositions,

Defendants have knowingly and systematically induced, caused, materially contributed to and participated in the infringing activity.

43.    Furthermore, as sophisticated business owners, Defendants know that they must have a license for the public performance and public display of the musical compositions in the karaoke machines that Defendants have on their premises.  Prior to this litigation, Defendants were in receipt of, and/or were aware of, cease and desist letter(s) and/or public announcements/press releases warning Karaoke Establishments to secure the proper licensing for the karaoke machines and musical compositions thereon, particularly a license for the Compositions (which include the Registered Compositions).

44.    By knowingly providing patrons unfettered access to publicly perform and publicly display each of the unlicensed Registered Compositions, Defendants have engaged in contributory copyright infringement.  Despite Defendants' knowledge that they lacked authorization to publicly perform and to publicly display each of the Compositions, Defendants knowingly, willfully and intentionally continued to induce, cause or materially contribute to the infringement of Plaintiff's rights by holding themselves out as a "karaoke-bar" and providing patrons of the Karaoke Establishments with individual rooms equipped to publicly perform and display each of the Registered Compositions in violation of Plaintiff's rights under Sections 105(4) and 106(5) of the Copyright Act.

45.    On information and belief, Defendants' contributory unlawful conduct has continued since the inception of the Karaoke Establishments on a nightly basis and on such numerous occasions that recounting every instance of infringement is impossible.

46.    Each unauthorized public performance of each of the Registered Compositions constitutes a separate and distinct act of contributory copyright infringement.

47.    Each unauthorized public display of each of the Registered Compositions constitutes a separate and distinct act of contributory copyright infringement.

48.    Defendants' conduct has been and continues to be intentional, willful, and with full knowledge of Plaintiffs' rights in each of the Registered Compositions, and the contributory infringement thereof.

49.    The specific acts of contributory copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.   By continuing to provide unauthorized public performances and public displays of each of the Registered Compositions at their Karaoke Establishments, Defendants threaten to continue committing copyright infringement on essentially a daily basis.   Unless this Court restrains Defendants from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

50.    Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines.

51.    Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' contributory infringement of Plaintiff's copyrights, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the Registered Compositions.   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its damages, including Defendants'

profits from infringement, in connection with the Registered Compositions as will be proven at trial.

52.    Plaintiff is also entitled to recovery attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

## THIRD CLAIM FOR RELIEF FOR
## VICARIOUS COPYRIGHT INFRINGEMENT
### (Against All Defendants)

53.    Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 52, hereinabove, inclusive, as though set forth at length herein.

54.    As set forth in detail above, Elohim is the copyright owner of the Registered Compositions and has the exclusive right to grant licenses for the public performance and public display of the Registered Compositions in the territory of the United States.

55.    Defendants charge patrons money to access the karaoke machines that Defendants have placed in the Karaoke Establishments.   Patrons pay Defendants an hourly rate for access to one of Defendants' rooms, wherein patrons are provided the opportunity and ability to cause the public performance and public display of each of the Registered Compositions without a license. The sole purpose of the individual rooms is to provide patrons with a space to publicly perform and publicly display musical compositions (including the Registered Compositions) in the karaoke machines, and to charge patrons for such use.   In turn, Defendants have a direct financial interest in their patrons' unlawful public performance and public display of each of the Registered Compositions, as Defendants receive income directly from such use.

56.     Defendants have absolute control over the use of the karaoke machines on their premises, as well as their patrons' access so such karaoke machines and individual karaoke rooms.  Thus, Defendants have the right and ability to supervise,

control and stop the unlicensed public performance and unlicenced public display of each of the Registered Compositions by Defendants' patrons.

57.     As sophisticated business owners, Defendants know that they must have a license for the public performance and public display of the musical compositions in the karaoke machines that Defendants have on their premises. Furthermore, prior to this litigation, Defendants were in receipt of, and/or were aware of, cease and desist letter(s) and/or public announcements/press releases warning Karaoke Establishments to secure the proper licensing for the karaoke machines and musical compositions thereon, particularly a license for the Compositions (which include the Registered Compositions).

58.     By knowingly providing patrons unfettered access to publicly perform and publicly display each of the unlicensed Registered Compositions, and charging patrons for such use, Defendants profit from the direct infringement of Plaintiff's rights and thereby have engaged in vicarious copyright infringement.  Despite Defendants' knowledge that they lacked authorization to publicly perform and to publicly display each of the Compositions, Defendants knowingly, willfully and intentionally continued to profit from such use and knowingly failed to stop it, notwithstanding their right and ability to supervise the infringement in violation of Plaintiff's rights under Sections 105(4) and 106(5) of the Copyright Act.

59.     Since the inception of the Karaoke Establishments, Defendants have knowingly supervised and had a direct financial interest in the

unauthorized public performance and unauthorized public display of each of the Registered Compositions.  On information and belief, Defendants' contributory unlawful conduct has continued since the inception of the Karaoke Establishments on a nightly basis and on such numerous occasions that recounting every instance of infringement is impossible.

60.    Each unauthorized public performance of each of the Registered Compositions constitutes a separate and distinct act of vicarious infringement.

61.    Each unauthorized public display of each of the Registered Compositions constitutes a separate and distinct act of vicarious infringement.

62.    Defendants' conduct has been and continues to be intentional, willful and with full knowledge of Plaintiff's rights in each of the Compositions, and the vicarious infringement thereof.

63.    The specific acts of vicarious copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.   By continuing to provide unauthorized public performances and public displays of each of the Registered Compositions at their Karaoke Establishments, Defendants threaten to continue committing copyright infringement on essentially a daily basis.   Unless this Court restrains Defendants
from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

64.    Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines.

65.    Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' vicarious infringement of Plaintiff's copyrights, Plaintiff is entitled

to recover up to $150,000 in statutory damages for each of the Registered Compositions.   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the Registered Compositions as will be proven at trial.

66.   Plaintiff is also entitled to recovery attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

## FOURTH CLAIM FOR RELIEF FOR
## INDUCING COPYRIGHT INFRINGEMENT
### (Against All Defendants)

67.   Plaintiff realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 66, hereinabove, inclusive, as though set forth at length herein.

68.   As set forth in detail above, Elohim is the copyright owner of the Registered Compositions and has the exclusive right to grant licenses for the public performance and public display of the Registered Compositions in the territory of the United States.

69.   Defendants charge patrons money to access the karaoke machines that Defendants have placed in the Karaoke Establishments.   Patrons pay Defendants an hourly rate for access to one of Defendants' rooms, wherein patrons are provided the opportunity and ability to cause the public performance and public display of each of the Registered Compositions without a license. The sole purpose of the individual rooms is to provide patrons with a space to publicly perform and publicly display musical compositions (including the Registered Compositions) in the karaoke machines, and to charge patrons for such use.

70.     By providing patrons the space and ability (i.e., by furnishing the individual rooms with a karaoke machine, video monitor and sound system to play recordings of the musical compositions and display their lyrics) to publicly perform and to publicly display each of the Registered Compositions, Defendants actively promote, encourage and induce their patrons to infringe Plaintiff's rights in each of the Registered Compositions.

71.     Furthermore, as sophisticated business owners, Defendants know that they must have a license for the public performance and public display of the musical compositions in the karaoke machines that Defendants have on their premises.  Furthermore, prior to this litigation, Defendants were in receipt of, and/or were aware of, cease and desist letter(s) and/or public announcements/press releases warning Karaoke Establishments to secure the proper licensing for the karaoke machines and musical compositions thereon, particularly a license for the Compositions (which include the Registered Compositions).

72.     On information and belief, Defendants' contributory unlawful conduct has continued since the inception of the Karaoke Establishments on a nightly basis and on such numerous occasions that recounting every instance of infringement is impossible.

73.     Each unauthorized public performance of each of the Registered Compositions constitutes a separate and distinct act of inducing copyright infringement.

74.     Each unauthorized public display of each of the Registered Compositions constitutes a separate and distinct act of inducing copyright infringement.

75.    Defendants' conduct has been and continues to be intentional, willful and with full knowledge of Plaintiff's rights in each of the Compositions, and the inducement of infringement thereof.

76.    The specific acts of vicarious copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.    By continuing to provide unauthorized public performances and public displays of each of the Registered Compositions at their Karaoke Establishments, Defendants threaten to continue committing copyright infringement on essentially a daily basis.    Unless this Court restrains Defendants from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

77.    Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines.

78.    Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' vicarious infringement of Plaintiff's copyrights, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the Registered Compositions.    Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the Registered Compositions as will be proven at trial.

79.    Plaintiff is also entitled to recover attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

<u>**On the First Claim for Direct Copyright Infringement against all Defendants:**</u>

    A.    For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

    B.    For an award of damages, including actual damages and any gains, profits and advantages, obtained by Defendants as a result of their acts of infringement in an amount according to proof;

    C.    For an award of statutory damages in an amount of up to $150,000 for each of the Registered Works infringed according to proof at the time of trial;

    D.    For a preliminary and permanent injunction prohibiting Defendants, and their agents, employees, servants, and anyone else acting in concert with them, from infringing, in any manner, the Registered Compositions, pursuant to 17 U.S.C. § 502;

    E.    For an order directing the impoundment or other reasonable disposition of all infringing phonorecords and copies of each of the Registered Compositions, including all equipment containing copies or enabling performance or display of the Registered Compositions;

    F.    For costs of suit, including reasonable attorney's fees pursuant to 17 U.S.C. § 505.

**On the Second Claim for Contributory Copyright Infringement against all Defendants:**

 A. For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

 B. For an award of damages, including actual damages and any gains, profits and advantages, obtained by Defendants as a result of their acts of infringement in an amount according to proof;

 C. For an award of statutory damages in an amount of up to $150,000 for each of the Registered Works infringed according to proof at the time of trial;

 D. For a preliminary and permanent injunction prohibiting Defendants, and their agents, employees, servants, and anyone else acting in concert with them, from infringing, in any manner, the Registered Compositions, pursuant to 17 U.S.C. § 502;

 E. For an order directing the impoundment or other reasonable disposition of all infringing phonorecords and copies of each of the Registered Compositions, including all equipment containing copies or enabling performance or display of the Registered Compositions;

 F. For costs of suit, including reasonable attorney's fees pursuant to 17 U.S.C. § 505.

**<u>On the Third Claim for Vicarious Infringement against all Defendants:</u>**

     A.     For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

     B.     For an award of damages, including actual damages and any gains, profits and advantages, obtained by Defendants as a result of their acts of infringement in an amount according to proof;

     C.     For an award of statutory damages in an amount of up to $150,000 for each of the Registered Works infringed according to proof at the time of trial;

     D.     For a preliminary and permanent injunction prohibiting Defendants, and their agents, employees, servants, and anyone else acting in concert with them, from infringing, in any manner, the Registered Compositions, pursuant to 17 U.S.C. § 502;

     E.     For an order directing the impoundment or other reasonable disposition of all infringing phonorecords and copies of each of the Registered Compositions, including all equipment containing copies or enabling performance or display of the Registered Compositions;

     F.     For costs of suit, including reasonable attorney's fees pursuant to 17 U.S.C. § 505.

**<u>On the Fourth Claim for Inducing Infringement against all Defendants:</u>**

    A.    For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

    B.    For an award of damages, including actual damages and any gains, profits and advantages, obtained by Defendants as a result of their acts of infringement in an amount according to proof;

    C.    For an award of statutory damages in an amount of up to $150,000 for each of the Registered Works infringed according to proof at the time of trial;

    D.    For a preliminary and permanent injunction prohibiting Defendants, and their agents, employees, servants, and anyone else acting in concert with them, from infringing, in any manner, the Registered Compositions, pursuant to 17 U.S.C. § 502;

    E.    For an order directing the impoundment or other reasonable disposition of all infringing phonorecords and copies of each of the Registered Compositions, including all equipment containing copies of or enabling performance or display of the Registered Compositions;

    F.    For costs of suit, including reasonable attorney's fees pursuant to 17 U.S.C. § 505.

**<u>On All Claims for Relief:</u>**

A.   For costs of suit incurred herein;

B.   For prejudgment interest at the legal rate; and

C.   For such other and further relief as the Court deems just and proper.



CLEARY GIACOBBE ALFIERI JACOBS LLC
Attorneys for Plaintiff


By: */s/ Richard A. Gantner*

Dated: March 19, 2019          Richard A. Gantner, Esq.

**COMMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims for relief which may be tried to a jury.

**CLEARY GIACOBBE ALFIERI JACOBS LLC**
Attorneys for Plaintiff

By: */s/ Richard A. Gantner*
Dated: March 19, 2019          Richard A. Gantner, Esq.