**UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF NEW YORK**

ELOHIM EPF USA, INC., a California
Corporation,

Plaintiff,

-v-

162 D& Y CORP., a New York corporation d/b/a
FLOWER KARAOKE; DONG HYUN HA, an
individual; MANHA TT AN ZILLER ZILLER,
INC., a New York corporation d/b/a K2
KARAOKE; YURIND LEE, and individual; Y &P
BAYSIDE CORP., a New York corporation d/b/a
HAPPY KARAOKE; PHIL SOOK CHO, an
individual; SING SING BELL, INC., a New York
corporation d/b/a CHRISTMAS KARAOKE; JIN E
AN, an individual; MUSICBOX KTV, INC., a
New York corporation d/b/a MUSICBOX K-TV;
ANTHONY KIM, an individual; M & S MUSIC
STUDIO INC., a New York corporation d/b/a
GAGOPA KARAOKE; HYE KYUNG HAN, an
individual; SS NOBLESSE HOUSE, INC., a New
York corporation d/b/a NOBLESSE HOUSE;
YINGHUA HUANG, an individual; PLACE OF
HAPPY & LUCKY INC., a New York corporation
d/b/a THE KING KARAOKE; GUNHA SONG, an
individual; NORAE HAHNUN JIB CORP., a New
York corporation d/b/a OPEN KARAOKE; DONG
HYUN HA, an individual; BIZMAX NY, INC., a
New York corporation d/b/a WOW KARAOKE;
LI BEOM KIM, an individual; HARMONY
KARAOKE KTV, INC., a New York corporation
d/b/a HARMONY KARAOKE; JOSEPH N.
ZOINO, an individual; SWEETIE & VIP, INC., a
New York corporation d/b/a I LUV LUXURY
ROOM; KYUNG A. CHUNG, an individual; YS2
ENTERPRISES, INC., a New York corporation
d/b/a CEO BUSINESS CLUB; HYUN HAK YI, an

**Case No.: 19 CV
02431 (AJN)**

**NOTICE OF
MOTION TO
VACATE  ENTRY
OF DEFAULT
PURSUANT TO
FED. R. CIV. P.
55(c)**

individual; EUNSIK SUN, an individual; G S
GLOBAL CORP, a New York corporation d/b/a
RED; DAVID RHEE, an individual; SOMETHING
1, INC., a New York corporation d/b/a
SOMETHING; SUNNY TAE KIM, an individual,
SAGWA NAMOO, INC., a New York corporation
d/b/a SAGWA NAMOO; KYUNG SOON NAM,

an individual; TOMATO 162, INC., a New York
corporation d/b/a TOMA TO KARAOKE ROOM;
SUNG LAW KIM, an individual; and DOES 1
through 20, inclusive

                    Defendants

---

## NOTICE OF MOTION IN SUPPORT TO VACATE ENTRY OF DEFAULT

---

Amit Deshmukh, Esq.
**DESH LAW LLC**
35-02 150th Place, Suite 206
Flushing, New York 11354
Tel:(862) 213-4960
     (201) 849-5246

*Counsel for Defendants Sing Sing Bell, Inc., a New
York Corporation d/b/a Christmas Karaoke, Jin E. An,
an individual, M & S Music Studio, Inc., a New York
Corporation d/b/a Gagopa Karaoke, Hye Kyung Han,
an individual, Bizmax NY, Inc., a New York
Corporation d/b/a Wow Karaoke, and Li Beom Kim,
an individual*

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE, that upon the Memorandum of Law in Support of Defendants' Motion to Vacate Entry of Default, the Certification of Changene Song and Amit Deshmukh and all exhibits attached thereto, and upon all the papers and proceedings had herein, Defendants will move this Court, before the Honorable Alison J. Nathan, at the United States Courthouse for the Southern District of New York located at 40 Foley Square, New York, New York 10007 on a date and time to be designated by the Court, for an Order pursuant to Fed. R. Civ. P. 55(c) vacating the entry of defaults against Sing Sing Bell, Inc., a New York Corporation d/b/a Christmas Karaoke, Jin E. An, an individual, M & S Music Studio, Inc., a New York Corporation d/b/a Gagopa Karaoke, Hye Kyung Han, an individual, Bizmax NY, Inc., a New York Corporation d/b/a Wow Karaoke, and Li Beom Kim, an individual.

Amit Deshmukh, Esq.
**DESH LAW LLC**
35-02 150th Place, Suite 206
Flushing, New York 11354
Tel:(862) 213-4960
   (201) 849-5246

UNITED STATES DISTRICT
COURT SOUTHERN
DISTRICT OF NEW YORK

ELOHIM EPF USA, INC., a California
Corporation,

Plaintiff,

-v-

162 D& Y CORP., a New York corporation d/b/a
FLOWER KARAOKE; DONG HYUN HA, an
individual; MANHATTAN ZILLER ZILLER,
INC., a New York corporation d/b/a K2
KARAOKE; YURIND LEE, and individual; Y &P
BAYSIDE CORP., a New York corporation d/b/a
HAPPY KARAOKE; PHIL SOOK CHO, an
individual; SING SING BELL, INC., a New York
corporation d/b/a CHRISTMAS KARAOKE; JIN E
AN, an individual; MUSICBOX KTV, INC., a
New York corporation d/b/a MUSICBOX K-TV;
ANTHONY KIM, an individual; M & S MUSIC
STUDIO INC., a New York corporation d/b/a
GAGOPA KARAOKE; HYE KYUNG HAN, an
individual; SS NOBLESSE HOUSE, INC., a New
York corporation d/b/a NOBLESSE HOUSE;
YINGHUA HUANG, an individual; PLACE OF
HAPPY & LUCKY INC., a New York corporation
d/b/a THE KING KARAOKE; GUNHA SONG, an
individual; NORAE HAHNUN JIB CORP., a New
York corporation d/b/a OPEN KARAOKE; DONG
HYUN HA, an individual; BIZMAX NY, INC., a
New York corporation d/b/a WOW KARAOKE;
LI BEOM KIM, an individual; HARMONY
KARAOKE KTV, INC., a New York corporation
d/b/a HARMONY KARAOKE; JOSEPH N.
ZOINO, an individual; SWEETIE & VIP, INC., a
New York corporation d/b/a I LUV LUXURY
ROOM; KYUNG A. CHUNG, an individual; YS2
ENTERPRISES, INC., a New York corporation
d/b/a CEO BUSINESS CLUB; HYUN HAK YI, an

Case No.: 19 CV
02431 (AJN)

**MEMORANDUM
OF LAW IN
SUPPORT TO
VACATE MOTION
OF ENTRY OF
DEFAULT**

individual; EUNSIK SUN, an individual; G S
GLOBAL CORP, a New York corporation d/b/a
RED; DAVID RHEE, an individual; SOMETHING
1, INC., a New York corporation d/b/a
SOMETHING; SUNNY TAE KIM, an individual,
SAGWA NAMOO, INC., a New York corporation
d/b/a SAGWA NAMOO; KYUNG SOON NAM,
an individual; TOMATO 162, INC., a New York
corporation d/b/a TOMATOKARAOKE ROOM;
SUNG LAW KIM, an individual; and DOES 1
through 20, inclusive

Defendants.

---

## MEMORANDUM OF LAW OF MOTION IN SUPPORT TO VACATE ENTRY OF DEFAULT

Amit Deshmukh, Esq.
**DESH LAW LLC**
35-02 150th Place, Suite 206
Flushing, New York 11354
Tel:(862) 213-4960
     (201) 849-5246

*Counsel for Defendants Sing Sing Bell, Inc., a New
York Corporation d/b/a Christmas Karaoke, Jin E. An,
an individual, M & S Music Studio, Inc., a New York
Corporation d/b/a Gagopa Karaoke, Hye Kyung Han,
an individual, Bizmax NY, Inc., a New York
Corporation d/b/a Wow Karaoke, and Li Beom Kim,
an individual*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT                                                                                  5

STATEMENT OF FACTS AND PROCEDURAL HISTORY                                                               5

ARGUMENT                                                                                               6

I.   RELIEF OF ENTRY OF DEFAULT UNDER FED. R. CIV. P. 55(c) SHOULD
     BE GRANTED BECAUSE DEFENDANTS' EXCUSABLE NEGLECT IS NOT WILLFUL
     UNDER THE CIRCUMSTANCES AND A MERITORIOUS DEFENSE EXISTS FOR
     THE COURT TO EXERCISE ITS DISCRETION SO THAT A JUST RESULT CAN
     BE REACHED                                                                                        6

A. PRIOR TO DEFENDANTS' CURRENT REPRESENTATION, THE MISCOMMUNICATION
   BETWEEN DEFENDANTS, DEFENDANTS' CORPORATE COUNSEL AND OUTSIDE LAW
   FIRM LED TO DEFENDANTS' FAILURE TO ANSWER, AND ALTHOUGH IT MAY
   WEIGH AGAINST THE PARTY SEEKING RELIEF, SHOULD NOT PRECLUDE THE
   VACATE OF ENTRY OF DEFAULT AS IT DOES NOT REACH THE LEVEL OF
   WILLFULNESS IN DETERMINING EXCUSABLE NEGLECT                                                        7

B. INITIAL INQUIRY WITH THE KOREAN MUSIC COPYRIGHT ASSOCIATION
   REVEALS THAT THE SUB-PUBLISHING AGREEMENT BETWEEN "ELOHIM EPF
   KOREA LTD." AND "ELOHIM EPF USA, INC." IS INCONSISTENT WITH THE
   CHAIN OF OWNERSHIP OF ASSIGNMENT AND THEREFORE PLAINTIFF LACKS
   STANDING.                                                                                           9

C. PLAINTIFF HAS FAILED TO PLEAD ANY ACT OF INFRINGEMENT UPON THE
   DEFENDANTS' SPECIFIC KARAOKE ESTABLISHMENT  . . . . . . . . . .11

D. DUE TO THE CUSTOMERS USING DEFENDANTS' KARAOKE MACHINES LOCATED IN
   PRIVATE, ENCLOSED ROOMS, THE INDIVIDUAL DEFENDANTS ASSOCIATED WITH
   ITS RESPECTIVE ENTITY DO NOT POSSESS THE ABILITY OR KNOWLEDGE TO
   SUPERVISE ANY ALLEGED INFRINGING ACTIVITY AND THUS IS NOT LIABLE
   FOR PLAINTIFF'S CLAIMS OF CONTRIBUTORY INFRINGEMENT, VICARIOUS
   INFRINGEMENT, AND INDUCING COPYRIGHT INFRINGMENT . . . . . . .13

II.  PLAINTIFF WILL NOT BE PREJUDICED, AND DEFENDANTS WILL HAVE THE
     OPPORTUNITY TO HAVE THE MATTER ADJUDICATED ON THE MERITS IF
     DEFENDANTS' MOTION TO VACATE ENTRY OF DEFAULT IS GRANTED... 13

CONCLUSION                                                                                            14

## TABLE OF AUTHORITIES

Am. All. Ins. Co. v. Eagle Ins. Co.,
92 F.3d 57, 60 (2d Cir. 1996)                                    7

Anilina Fabrique de Colorants v. Aakash Chemicals and
Dyestuffs, Inc.,
856 F.2d 873, 879 (7th Cir.1988)                                9

Davis v. Musler,
713 F.2d 907, 916 (2d Cir. 1983)                               14

Enron Oil Corp. v. Diakuhara,
10 F.3d 90, 96 (2d Cir.19)                                      6

Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656-57
(3d Cir.1982).                                                ..14

Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d
82, 89 (2d Cir. 1998)                                           9

Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.,
254 F. Supp. 3d 584, 587 (S.D.N.Y. 2017),
aff'd, 738 F. App'x 722 (2d Cir. 2018)                      ...9

Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)............7

Pecarsky v. Galaxiworld.com, Ltd.,
249 F.3d 167, 171 (2d Cir.2001)                             .. 6
6

Powerserve Int'l, Inc. v. Lavi,
239 F.3d 508, 514, (2d Cir. 2001)                              6

Wagstaff-EL v. Carlton Press Co.,

913 F.2d 56 (2d Cir.1990)                                      8

## PRELIMINARY STATEMENT

Defendants ("Defendants") Sing Sing Bell, Inc., a New York Corporation d/b/a Christmas Karaoke, Jin E. An, an individual, M & S Music Studio, Inc., a New York Corporation d/b/a Gagopa Karaoke, Hye Kyung Han, an individual, Bizmax NY, Inc., a New York Corporation d/b/a Wow Karaoke, and Li Beom Kim, an individual, seek to vacate entry of default for good cause shown pursuant to Fed. R. Civ. P. 55(c). Defendants (1) were not willfulness of the default; (2) there exists a meritorious defense to the defaulted claims; and (3) Plaintiff will not be prejudiced should relief be granted.

Accordingly, the Court should grant Defendants' motion to vacate entry of default respectfully requests that Defendants' motion to vacate entry of default be granted so that the matter can be adjudicated on the merits of the case.

## RELEVANT STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff commenced this action by filing a Complaint on March 19, 2019 against Defendants alleging violation of copyright infringement, contributory copyright infringement, vicarious copyright infringement, and inducing copyright infringement against Plaintiff, an alleged sub-publisher. (D.E. 1). A clerk's certificate of default was entered on November 4, 2019. (D.E. 51). On January 20, 2020, Plaintiff filed an Amended Complaint. (D.E. 71). A notice of appearance was filed by Desh Law LLC on behalf of

5

Defendants on February 4, 2020. (D.E. 80). Subsequently, Defendants entered into settlement negotiations with Plaintiff. A stipulation proposal to consent to vacate entry of default was not agreed to by Plaintiff.

## ARGUMENT

**I. RELIEF OF ENTRY OF DEFAULT UNDER FED. R. CIV. P. 55(c) SHOULD BE GRANTED BECAUSE DEFENDANTS' EXCUSABLE NEGLECT IS NOT WILLFUL UNDER THE CIRCUMSTANCES AND A MERITORIOUS DEFENSE EXISTS FOR THE COURT TO EXERCISE ITS DISCRETION SO THAT A JUST RESULT CAN BE REACHED.**

The court may set aside an entry of default for good cause shown. Fed. R. Civ. P. 55(c). While vacating entry of default is in the discretion of the district court, there is a "preference for resolving disputes on the merits." Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001). Defaults generally are disfavored and are reserved for rare occasions. Accordingly, all doubts must be resolved in favor of the party seeking relief from the default in order to ensure that, to the extent possible, disputes are resolved on their merits. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir.1993).

The Court considers three factors when determining whether "good cause" exists to vacate entry of default: (1) the willfulness of the default; (2) the existence of a meritorious defense to the defaulted claims; and (3) prejudice to the non-defaulting party should relief be granted. Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 171 (2d Cir.2001). "Good cause" should be construed generously. Id. "While courts are entitled to enforce compliance with the time limits

6

of the Rules by various means, the extreme sanction of a default
judgment must remain a weapon of last, rather than first, resort."
Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).

**A. PRIOR TO DEFENDANTS' CURRENT REPRESENTATION, THE
MISCOMMUNICATION BETWEEN DEFENDANTS, DEFENDANTS' CORPORATE
COUNSEL AND OUTSIDE LAW FIRM LED TO DEFENDANTS' FAILURE TO
ANSWER, AND ALTHOUGH IT MAY WEIGH AGAINST THE PARTY SEEKING
RELIEF, SHOULD NOT PRECLUDE THE VACATE OF ENTRY OF DEFAULT AS IT
DOES NOT REACH THE LEVEL OF WILLFULNESS IN DETERMINING EXCUSABLE
NEGLECT.**

The court weighs the "willfulness" standard for findings of bad
faith, or at least something more than mere negligence, before
rejecting a claim of excusable neglect based on an attorney's or a
litigant's error. Am. All. Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 60
(2d Cir. 1996).

Here, the relationship between the parties and their respective
acts during the relevant period should be considered in favor of
excusing Defendants as their actions were not calculated or hinged upon
bad faith. Beginning on or about April 2019, Defendants, acting
collectively, had a meeting with corporate counsel for purposes of
retaining legal representation for this matter. However, corporate
counsel responded that its firm does not handle federal cases in the
State of New York. Instead, counsel provided alternative options of
referring the case to an outside law firm. Through corporate counsel's
efforts, an initial agreement was believed to have been reached with

7

the referral law firm to represent the Defendants in this action. Issues of miscommunications arose when corporate counsel stated to referral law firm of joining in the case by *pro hac vice*. Consequently, it appears the  referral law firm mistook the statement to otherwise mean that the clients would be retained by its corporate counsel instead. Thus, the miscommunication was not noticed until after Defendants were in default. Subsequently, Desh Law firm was retained soon thereafter and filed its notice of appearance. Defendants' request of a stipulation to vacate default and extend time to answer was rejected by Plaintiff.

"Willfulness" standard for vacating default judgment based on mistake, inadvertence, or excusable neglect does not include careless or negligent errors. Am. All. Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996). Thus, the Court notes that "the basic purpose of default judgment is to protect parties from undue delay while strong public policy favors resolving disputes on the merits. Therefore, although prior counsels incorrectly assumed that neither represented the Defendants at that point in time, their actions are not pre-meditated nor does it reach the level of willfulness defined by this Court. Willfulness is one factor to consider, along with the availability of a meritorious defense and the existence of prejudice, and in the totality of the circumstances, favor the vacation of default. Id.; *See* Wagstaff-EL v. Carlton Press Co., 913 F.2d 56 (2d

8

Cir.1990) (default judgment properly vacated after weighing of all
relevant factors).

**B. INITIAL INQUIRY WITH THE KOREAN MUSIC COPYRIGHT ASSOCIATION
REVEALS THAT THE SUB-PUBLISHING AGREEMENT BETWEEN "ELOHIM EPF
KOREA LTD." AND "ELOHIM EPF USA, INC." IS INCONSISTENT WITH THE
CHAIN OF OWNERSHIP OF ASSIGNMENT AND THEREFORE PLAINTIFF LACKS
STANDING.**

To satisfy the criterion of a "meritorious defense,"
the defense need not be ultimately persuasive at this stage.
"A defense is meritorious if it is good at law so as to give the
factfinder some determination to make." Anilina Fabrique de Colorants
v. Aakash Chemicals and Dyestuffs, Inc., 856 F.2d 873, 879 (7th
Cir.1988). Here, in order to maintain an action
for copyright infringement, Plaintiff is required to show (1) ownership
of a valid copyright, and (2) copying of constituent elements of the
work that are original. Latin Am. Music Co., Inc. v. Spanish Broad.
Sys., Inc., 254 F. Supp. 3d 584, 587 (S.D.N.Y. 2017), aff'd, 738 F.
App'x 722 (2d Cir. 2018).

Since the alleged works infringed are foreign, "the issue of
ownership of the copyright is determined according to the law of the
country which has the closest relationship to the works while the issue
of copyright infringement will be determined according to the law of
the country of infringement." Itar-Tass Russian News Agency v. Russian
Kurier, Inc., 153 F.3d 82, 89 (2d Cir. 1998). In determining the

9

applicable law on ownership issues, relevant factors include the
nationality of the authors, the place of initial publication and the
country of origin. Id.

In general, when a composition is produced, published and
originated in South Korea, the original author registers its copyright
with Korean Copyright Association. Thereafter, it will be the Korean
Copyright Association to handle, manage, license its copyrighted works.
Here, the compositions Plaintiff allege to have its copyright ownership
are all registered with the Korean Copyright Association. Song Aff. ¶
21. In order to have a publisher claim ownership of copyright that are
registered with the Korean Copyright Association, the publisher must
either obtain its assignment or license from the Korean Copyright
Association or have the author assign its copyright directly to the
publisher. However, in the latter case, if the copyright work was
already registered with the Korean Copyright Association, then the
assignment between the author and the publisher must be notified and
reported to the Korean Copyright Association using the Korean Copyright
Association Conditional Transfer Agreement.

According to Ji Won Jung ("Mr. Jung"), the head data team member
of the Korean Music Copyright Association ("KMCA"), there is no entity
named as "Elohim EPF Korea, Ltd." registered with the KMCA. If true,
Plaintiff has failed to provide a valid chain of ownership through its
sub-publishing agreement between Elohim EPF Korea, Ltd. And Elohim EPF

10

USA, Inc.

Mr. Jung has provided information related to the rights and members of the KMCA. A music publisher ("Publisher") means '"a person whose main right is to promote the preservation of rights and promote the use of the work at home and abroad by conditionally transferring the copyright to the copyright under the terms and conditions of the trust agreement."' KMCA's Regulations on the conclusion of copyright trust agreements' Article 4, refers that such Publishers are members of KMCA. When a Publisher joins KMCA as a member, they sign the 'Copyright Trust Agreement Terms and Conditions' in the same way as general copyright holders, and have the rights and obligations mentioned in the terms and conditions for each specific compositions or copyrighted work.

However, Elohim EPF Korea, Ltd., the assignor of the alleged compositions to Elohim EPF USA, Inc., has not reported any documentation nor Conditional Transfer Agreement of the alleged composition works that were entered into by and between the original author and Elohim EPF Korea, Ltd. to the KMCA. In fact, in some of the alleged compositions, other domestic publishers not named "Elohim EPF Korea, Ltd. may have signed and reported the conditional transfer · agreements.

Therefore, Plaintiff has not adequately established that Elohim EPF USA, Inc. is the owner of the copyrights because it does not

11

provide a full chain of ownership of a valid assignment that is properly authenticated. It also appears that the sub-publishing agreement contains missing pages, and thus Plaintiff has provided, at the very least, an incomplete copy of the agreement. See Deshmukh Aff. ¶ 5, Exhibit A.

## C. PLAINTIFF HAS FAILED TO PLEAD ANY ACT OF INFRINGEMENT UPON THE DEFENDANTS' SPECIFIC KARAOKE ESTABLISHMENTS.

Plaintiff, in its pleading, has alleged the following facts of Defendants' karaoke establishments: Upon entering a Karaoke Establishment, one of Defendants' employees will assign patrons to one of the multiple individual karaoke rooms located therein. In these individual karaoke rooms, Defendants have set up a karaoke machine, video monitor, and sound system (e.g., speakers, amplifier and microphone) such that patrons can access and perform the musical compositions pre-recorded onto the karaoke machines, which compositions include the Registered Compositions. Within each room there is also a binder that lists all of the karaoke musical compositions (i.e., songs) by name and number, for selection by customers, and which include the Registered Compositions. (D.E. 1). After a patron selects a certain musical composition, the instrumental music for the composition is played over the sound system, while concurrently a video monitor displays the lyrics for the musical composition so that the patron can sing along. (D.E. 1).

12

However, the described karaoke establishments are not located in the State of New York, and not specific to the named Defendants. Plaintiff states that "According to public records, since on or about April 2017, Defendants have, and continue to, own and operate various so-called "karaoke bars" in the city of Santa Clara." (D.E. 1).

Plaintiff fails to describe accurately Defendants' karaoke establishment which is primarily suited towards the Korean population and its setting similar to Korea where the customers' party consists of friends and family and pay for a separate, private room mainly equipped with a karaoke machine. (D.E. 1). However, the customers may also purchase food and beverages, as well as have other forms of entertainment available such as listening to music available on their phones through the speakers using Bluetooth connections while having conversations with each other. Thus, karaoke placed in Korean establishments may be differentiated from an American karaoke bar in that the Korean karaoke setting is a private space and performed in front of family and friends rather than an open space where a customer may go on stage and sing in front of strangers while using a karaoke machine.

Moreover, the fact that Defendants own a karaoke machine and that it may contain the alleged infringed compositions is insufficient to state a valid claim of copyright infringement. There exist no specific allegations of which composition was infringed by each of Defendants at

13

any time.   Rather, Plaintiff asserts a copyright infringement of public
performance as a blanket statement.

**D. DUE TO THE CUSTOMERS USING DEFENDANTS' KARAOKE MACHINES LOCATED IN PRIVATE, ENCLOSED ROOMS, THE INDIVIDUAL DEFENDANTS ASSOCIATED WITH ITS RESPECTIVE ENTITY DO NOT POSSESS THE ABILITY OR KNOWLEDGE TO SUPERVISE ANY ALLEGED INFRINGING ACTIVITY AND THUS IS NOT LIABLE FOR PLAINTIFF'S CLAIMS OF CONTRIBUTORY INFRINGEMENT, VICARIOUS INFRINGEMENT, AND INDUCING COPYRIGHT INFRINGMENT.**

The individual Defendants are not liable for contributory copyright
infringement, vicarious copyright infringement, and inducing copyright
infringement because they do not possess the right and ability to
supervise private activities of the customers inside the private rooms.
Further, Defendants do not have a financial interest in the performance
of songs at their establishments as they charge customers for the
private room space as opposed to the specific alleged conduct in the
performance of songs. (D.E. 1).

**III. PLAINTIFF WILL NOT BE PREJUDICED, AND DEFENDANTS WILL HAVE THE OPPORTUNITY TO HAVE THE MATTER ADJUDICATED ON THE MERITS IF DEFENDANTS' MOTION TO VACATE ENTRY OF DEFAULT IS GRANTED.**

Delay alone is not a sufficient basis for establishing
prejudice. Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656-57
(3d Cir.1982). Rather, it must be shown that delay will "result in the
loss of evidence, create increased difficulties of discovery, or
provide greater opportunity for fraud and collusion. Davis v. Musler,
713 F.2d 907, 916 (2d Cir. 1983). Here, Defendants' counsel has stated
that the actions were not calculated nor willful, and Defendants are

14

able to establish a meritorious defense against Plaintiff's claims. Additionally, as the litigation at this period in time is still in early stages of discovery due to the addition of new Defendants, Plaintiff will not be prejudiced as to warrant a denial in Defendants' motion to vacate entry of default.

## CONCLUSION

In light of the aforementioned factors, Defendants, Sing Sing Bell, Inc., a New York Corporation d/b/a Christmas Karaoke, Jin E. An, an individual, M & S Music Studio, Inc., a New York Corporation d/b/a Gagopa Karaoke, Hye Kyung Han, an individual, Bizmax NY, Inc., a New York Corporation d/b/a Wow Karaoke, and Li Beom Kim, an individual respectfully request that Defendants' motion to vacate entry of default be granted so that the matter can be adjudicated on the merits of the case.

Respectfully Submitted,

Amit Deshmukh, Esq.
**DESH LAW LLC**
35-02 150th Place, Suite 206
Flushing, New York 11354
Tel:(862) 213-4960
    (201) 849-5246

15

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

ELOHIM EPF USA,
INC., a California
Corporation,

      Plaintiff,

       -v-

162 D& Y CORP., a
New York corporation
d/b/a FLOWER
KARAOKE; DONG
HYUN HA, an
individual;
MANHATTAN
ZILLER ZILLER, INC.,
a New York corporation
d/b/a K2 KARAOKE;
YURIND LEE, and
individual; Y&P
BAYSIDE CORP., a
New York corporation
d/b/a HAPPY
CARAOKE; PHIL
SOOK CHO, an
individual; SING SING
BELL, INC., a new
York corporation d/b/a
CHRISTMAS
KARAOKE; JIN E AN,
an individual;
MUSICVOX KTV,
INC., a Mew York
corporation d/b/a
GAGOPA KARAOKE;
HYE KYUNG HAN, an
individual; SS
NOBLESSE HOUSE,

**Case No.: 19 CV 02431 (AJN)**

**<u>AFFIDAVIT</u>**

INC., a New York
corporation d/b/a
NOBLESSE HOUSE;
YINHUA HUANG, an
individual; a New York
corporation d/b/a THE
KING KARAOKE;
GUNHA SONG, an
individual; NORAE
HAHNUN JIB CORP., a
New York corporation
d/b/a OPEN
KARAOKE; DONG
HYUN HA, an
individual; BIZMAX
NY, INC., a New York
corporation d/b/a WOW
KARAOKE KTV, INC.,
a New York corporation
d/b/a HARMONY
KARAOKE; JOSEPH
N/ ZOINO, an
individual; SWEETIE &
VIP, INC., a New York
corporation d/b/a I LUV
LUXURY ROOM;
KYUNG A. CHUNG, an
individual; YS2
ENTERPRISISES,
INC., a New York
corporation d/b/a CEO
BUSINESS CLBU;
HYUN HAK YI, an
individual; EUNSIK
SUN, an individual; G S
GLOBAL CORP, a New
York corporation d/b/a
RED; DAVID RHEE, an
individual' SAGWA
NAMOO, INC., a New
York corporation d/b/a
SAGWANAMOO;
KYUNGSOON NAM,
an individual; TOMATO
162, INC., a New York
corporation d/b/a

TOMATO
KARAOKEA ROOM;
SUNG LAW KIM, an
individual; and DOES 1
through 20, inclusive,

        Defendants.

**COMES NOW THE AFFIANT, AMIT DESHMUKH, ESQ., AND BEING DULY SWORN AND
CAUTIONED STATES AS FOLLOWS:**

1. My name is Amit Deshmukh, Esq. and am an attorney to law licensed to practice in the state of
   New York and New Jersey;

2. I am currently associated with and employed by Desh Law, LLC;

3. At the end of 2019, I was contacted by my clients regarding notice of the within lawsuit.

4. After, I contacted opposing counsel for plaintiff, Brandon Tesser, Esq., to discuss the suit and
   possible vacatur of default;

5. While discussing with opposing counsel, Mr. Tesser forwarded the sub-publishing agreement for
   review with my client. This was the first time my client had an opportunity to review same; See
   a true copy of the Sub-Publishing Agreement as **Exhibit A**;

6. Our office could not reach an agreement with opposing counsel regarding a consent order to
   vacate default;

7. My clients have been diligent in responding to all demands and legal proceedings, but things
   have been difficult since the beginning of 2020 due to COVID-19.

Pursuant to 28 U.S. Code Section 1746, I, Amit Deshmukh, certify under penalty of perjury that the aforementioned statement is true and correct.

Dated:

Respectfully Submitted,

By: _____
AMIT DESHMUKH

# EXHIBIT A

From: Jung Jiwon <jiwonjung@komca.or.kr>
Date: Thu, May 21, 2020 at 1:43 AM
Subject: Re:FW:FW:Re: Elohim EPF USA, Inc. v. 162 D&Y Corp., et al.
To: <c.song@lawofficessil.com>
Cc: Park Joon Seok <puca017@komca.or.kr>, Kwon Sei Jin <sij1230@komca.or.kr>, <sjlaw@lawofficessil.com>

Hello, Changene Song Esq,

I was informed by the Director of the Legal Affairs Bureau in regards to the contents of the publishing contract with Elohim; please consider the following response:

**Question 1. Has the Korean Copyright Association ever transferred or entrusted management of the works listed above to Elohim EPF Korea?**

First of all, the exact name registered as a member publisher of the Association is Elohim EPF, and we will answer on the premise that the inquiry subject "Elohim EPF Korea" is the same corporation as "Elohim EPF".

Normally, when a registered member (author) of the Association transfers his or her rights to a publisher such as Elohim EPF Korea, a publishing contract is made in accordance with the Conditional Transfer Contract provided by the association, and the contract must be reported to the association. However, Elohim EPF Korea has not reported such contract to the association for the 32 songs that you inquired.

However, there is a Conditional Transfer Contract reported by other domestic publisher as to some songs among the 32 songs you inquired, but it is not possible to confirm through which subcontracted publisher by the domestic publisher is conducting consignment management in the United States.

**Question 2. Has the Korean Copyright Association ever transferred or consigned to Elohim EPF USA for the works listed above?**

There is not.

**Question 3. How does the Korean Copyright Association manage works registered with the Korean Copyright Association in the USA? Are there any third-party management companies being outsourced?**

There are two ways to manage Association-managed works in the USA.

1. Mutual management contract signed with copyright organizations in the US

The Korea Music Copyright Association is currently entrusting the management of Korean works by signing a one-way or mutual management contract with the copyright organizations in the US, ASCAP, BMI, HFA, and SESAC.

2. Management through publishers
As answered in Question 1, when the Association member (author) transfers his or her rights to a publisher in Korea, the publisher may subcontract with third-party publisher in the United States to manage the work in the United States. However, subcontracting does not necessarily have to be made in the United States.

Therefore, if the association member (author) does not have a transfer contract with the publisher, it will be managed in the manner stated in number 1, and if there is a transfer contract it could be managed in the manner stated in number 2.

**Question 4. Is the work registered with the Korean Copyright Association limited to Korea only; and if the work to be used outside of Korea requires permission by the Korea Copyright Association?**

The Association receives a consignment from an Association member (author) through Consignment contract. This consignment means that the rights to the work are transferred from the Association member (author) to the Association. Therefore, the regional scope of the rights that the Association can exercise is not limited to Korea, and the rights are re-consigned to foreign copyright organizations for management in that foreign areas.

In addition, the Association acknowledges the Conditional Transfer Agreement between the Association member (author) and the publisher as answered above.

Therefore, when the work to be used in a foreign country, the permission to use the work may be provided by the foreign copyright organization or a publisher within that region.

If you have any further inquiries, please feel free to reply.
Thank you.

Sincerely,

**Jiwon Jung**

17047 Korea Music Copyright Association 1st Floor, 10., Donghang Paero, Gangnam-gu, Seoul

Phone  02-3660-0581, Fax. 02-2660-0579

E-mail. jiwonjung@komca.or.kr



From: 정지원 <jiwonjung@komca.or.kr>
Date: Thu, May 21, 2020 at 1:43 AM
Subject: Re:FW:FW:Re: Elohim EPF USA, Inc. v. 162 D&Y Corp., et al.
To: <c.song@iawofficessji.com>
Cc: 박준석 <puca017@komca.or.kr>, 권세진 <sj1230@komca.or.kr>, <sjlaw@iawofficessji.com>


안녕하십니까 송정진 변호사님,
한국음악저작권협회 자료팀장 정지원 이라고 합니다.

일전 송부하여 주신 출판사 엘로힘과의 계약 관련 내용에 대해 법무국장님으로부터 전달 받아 아래와 같이 회신 드리오니 참고하
여 주시기 바랍니다.

### 질문 1. 위에 기재된 저작물에 대하여 한국 저작권 협회는 Elohim EPF Korea에 양도 또는 위탁 관리를 하신 적이 있는지?

우선 협회 회원 권리출판사로 가입된 정확한 명칭은 엘로힘 이피에프이며, 질의주신 "Elohim EPF Korea"가 "엘로힘 이피에프"와
동일 법인이라는 전제 하에 답변 드리겠습니다.

통상적으로 협회 회원(저작자)이 Elohim EPF Korea와 같은 권리출판사에게 양도를 할 경우, 협회가 제공하는 조건부 양도계약
서에 의거하여 출판계약이 이루어지고, 그 계약서가 협회로 신고 되어야 합니다. 하지만 질의 주신 32곡의 경우 Elohim EPF
Korea가 협회에 그러한 내용을 신고한 바는 없습니다.

다만 32곡 중 일부 저작물의 경우 다른 국내출판사가 조건부 양도계약을 체결하고 신고한 바가 있으나, 해당 국내 출판사가 어떤
하청 출판사를 통해 미국지역 위탁 관리를 진행하고 있는지는 확인할 수 없습니다.

### 질문 2. 위에 기재된 저작물에 대하여 한국 저작권 협회는 Elohim EPF USA에 양도 또는 위탁 관리를 하신 적이 있는지?

없습니다.

### 질문 3. 한국 저작권 협회는 미주내에서의 한국 저작권 협회에 등록되어 있는 저작물들을 어떻게 관리 하는지? 관리를 위탁하신 제3의 회사가 있는지?

미주지역에서의 협회 관리저작물의 관리 방식은 다음의 2가지입니다.

1. 미국지역 내 저작권 단체와 상호관리계약 체결
한국음악저작권협회는 현재 미국 지역 내의 저작권 단체인 ASCAP, BMI, HFA, SESAC과 일방 또는 상호관리계약을 체결하여
한국 저작물의 관리를 위탁하고 있습니다.

2. 권리출판사를 통한 관리
질문 1에 답변드린 바와 같이 협회 회원저작자가 한국 지역 내의 권리출판사에게 양도를 한 경우, 해당 권리출판사가 미국 지역
에 있는 권리출판사에게 하청계약을 주는 형태로 관리되는 것입니다. 다만, 반드시 미국지역에 하청계약이 이루어지는 것은 아
닙니다.

따라서, 협회 회원 저작자가 권리출판사와 양도계약이 없다면 1의 방식으로 관리될 것이고, 권리출판사와 양도계약이 있다면 2
의 방식으로 관리될 것입니다.

### 질문 4. 한국 저작권 협회에 등록되어 있는 저작물은 한국에만 국한되어 있는것인지 아니면 한 번 등록되어진 저작물은 타국에서의 사용 또한 한국 저작권협회를 통해서 허가를 받아야 하는것인지?

협회는 신탁계약을 통해 회원(저작자)로부터 저작권을 신탁 받습니다. 해당 신탁은 권리자체가 회원(저작자)로부터 협회로 이전
되는 것을 의미합니다. 따라서 협회가 행사할 수 있는 권리의 지역적 범위는 한국에만 국한 되는 것은 아니며, 외국지역 관리를
위해 외국의 저작권단체에게 해당 권리를 재위탁하고 있습니다.

또한 협회는 위에서 답변드린 바와 같이 회원(저작자)와 권리출판사 간의 조건부양도계약을 인정하고 있습니다.

따라서, 외국에서의 사용 시 협회 관리 저작물의 이용허락 주체는 외국저작권단체 이거나 해당 지역의 권리출판사가 될 수 있습니다.

추가 문의사항이 있으시면 언제든지 회신 부탁드립니다.
감사합니다.

정지원 드림

**정지원 Jiwon Jung**

07547 서울시 강서구 공항대로 332 한국음악저작권협회 자료팀

Tel. 02-2560-0584  Fax. 02-2660-0572

E-mail. jiwonjung@komca.or.kr

 한국음악저작권협회

## CERTIFICATION OF TRANSLATION

I, Eunkyung Lee, certify that I am fluent in both English and Korean and that the attached
translations in English of email titled " Elohim EPF USA, Inc. v. 162 D&Y Corp., et al."
dated May 21, 2020 is true and accurate translation of the original document in Korean.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of
the foregoing statements are willfully false, I am subject to punishment.

Date: September 2, 2020

Eunkyung Lee

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELOHIM EPF USA,
INC., a California
Corporation,

       Plaintiff,

         -v-

162 D& Y CORP., a
New York corporation
d/b/a FLOWER
KARAOKE; DONG
HYUN HA, an
individual;
MANHATTAN
ZILLER ZILLER, INC.,
a New York corporation
d/b/a K2 KARAOKE;
YURIND LEE, and
individual; Y&P
BAYSIDE CORP., a
New York corporation
d/b/a HAPPY
CARAOKE; PHIL
SOOK CHO, an
individual; SING SING
BELL, INC., a new
York corporation d/b/a
CHRISTMAS
KARAOKE; JIN E AN,
an individual;
MUSICVOX KTV,
INC., a Mew York
corporation d/b/a
GAGOPA KARAOKE;
HYE KYUNG HAN, an
individual; SS
NOBLESSE HOUSE,

Case No.: 19 CV 02431 (AJN)

**AFFIDAVIT**

INC., a New York
corporation d/b/a
NOBLESSE HOUSE;
YINHUA HUANG, an
individual; a New York
corporation d/b/a THE
KING KARAOKE;
GUNHA SONG, an
individual; NORAE
HAHNUN JIB CORP., a
New York corporation
d/b/a OPEN
KARAOKE; DONG
HYUN HA, an
individual; BIZMAX
NY, INC., a New York
corporation d/b/a WOW
KARAOKE KTV, INC.,
a New York corporation
d/b/a HARMONY
KARAOKE; JOSEPH
N/ ZOINO, an
individual; SWEETIE &
VIP, INC., a New York
corporation d/b/a I LUV
LUXURY ROOM;
KYUNG A. CHUNG, an
individual; YS2
ENTERPRISISES,
INC., a New York
corporation d/b/a CEO
BUSINESS CLBU;
HYUN HAK YI, an
individual; EUNSIK
SUN, an individual; G S
GLOBAL CORP, a New
York corporation d/b/a
RED; DAVID RHEE, an
individual' SAGWA
NAMOO, INC., a New
York corporation d/b/a
SAGWANAMOO;
KYUNGSOON NAM,
an individual; TOMATO
162, INC., a New York
corporation d/b/a

TOMATO
KARAOKEA ROOM;
SUNG LAW KIM, an
individual; and DOES 1
through 20, inclusive,

       Defendants.

**COMES NOW THE AFFIANT, CHANGENE SONG, AND BEING DULY SWORN AND**

**CAUTIONED STATES AS FOLLOWS:**

1. My name is Changene Song.

2. I am an attorney to law licensed to practice in the state of New York and New Jersey.

3. I am currently associated with and employed to Law Offices SJ, LEE, LLC.

4. I am also an artist, registered with Koran Copyright Association, as a lyricist and composer.

5. Beginning on or about April 2019, Defendants, acting collectively, had a meeting with our firm, its corporate counsel, for purposes of retaining legal representation for this matter.

6. However, we responded that our firm does not handle federal cases in the State of New York. Instead, counsel provided alternative options of referring the case to an outside law firm.

7. Through corporate counsel's efforts, an initial agreement was believed to have been reached with the referral law firm to represent the Defendants in this action.

8. Issues of miscommunications arose when corporate counsel stated to referral law firm of joining in the case by pro hac vice. Consequently, it appears the referral law firm mistook the statement to otherwise mean that the clients would be retained by its corporate counsel instead.

9. Thus, the miscommunication was not noticed until after Defendants were in default.

10. Subsequently, Desh Law firm was retained soon thereafter and filed its notice of appearance. Defendants' request of a stipulation to vacate default and extend time to answer was rejected by Plaintiff.

11. Upon notice as to the subject matter litigation, I have contacted Korean Copyright Association to find out who holds and manage the copyright as to those song's that the Plaintiff claims. See **Exhibit A**.

12. Furthermore, I have requested general process as to how copyright is given or permitted to use when such songs are already embedded in the karaoke machine;

13. Initially, I was advised that once the songs are published in South Korea, the artist will register such songs with Korean Copyright Association.

14. Once registration is completed, then Korean Copyright Association will handle, manage, and license such copyright material and will disburse any payment being made to the original artist;

15. In regards to overseas uses, Korean Copyright Association contracts with a third party domestic company to handle, manage, and license such copyright material within that region;

16. Korean Copyright Association has stated that they have contracted a company in the United States to handle, manage, and license copyrighted songs that are registered with Korean Copyright Association, however, that contracted company is not Elohim EPF USA;

17. Also, there are number of karaoke machine brands that are out in the market;

18. Korean Copyright Association has stated that any songs that are embedded in the machines have been paid through the company that manufactures the machine. Furthermore, the manufacturer updates new songs every month and requires fees to be made by the customers who uses the machine. The owner who pays such fees to the manufacturer and receives updates, then,

technically speaking, the owner of the machine is permitted to use those songs that are

embedded in the machine;

19. After discovering such, I have conducted a search of all songs that Elohim EPF USA claims;

20. All songs were found to be registered with Korean Copyright Association;

21. The following are the songs that Elohim EPF USA claims that they have the right to the songs in

the United States by registering with the United States Copyright Office:

| Number | Title | Certificate of Registration # with the US Copyright Office | Registration # with the Korean Copyright Association |
|---|---|---|---|
| 1. | SAL MAN JJI GO_4 MINUTE | PA-2-040-538 | 100000607507 |
| 2. | HOE SANG_KANG SUNG HOON | PA-2-040-867 | 001000100289 |
| 3. | IU_A CHIM NUN MUL | SR-751-707 | 007000008091 |
| 4. | IU_DOO GEUN DOO GEUN DATE | SR-751-707 | 007000008092 |
| 5. | IU_GI CHA REUL TA GO | SR-751-707 | 007000008089 |
| 6. | IU_LOVE ATTACK | SR-751-707 | 007000008088 |
| 7. | IU_MARSHMALLOW | SR-751-707 | 007000008090 |
| 8. | THE BLUE & B1A4_GUDAEWA HAMKE | SR-734-414 | 001001163455 |
| 9. | THE BLUE & B1A4_NEOMANUL NUKIMYEO | SR-734-414 | 001001163457 |
| 10. | THE BLUE & B1A4_ENDLESS LOVE | SR-734-414 | 001001163461 |
| 11. | BARAMKYUL_WANKYU PARK | PA-2-028-619 | 100000608723 |
| 12. | IBYEOL-EUN SARANG DWILEUL TTALAWA_GUMMY | PA-2-028-639 | 007000006502 |
| 13. | GA SUM A-PA DO | PA-1-964-037 | 001001086842 |
| 14. | GONDRAE MANDRAE | PA-1-964-047 | 001001103133 |
| 15. | IT JI MAL A YO | PA-1-963-957 | 100000774202 |
| 16. | KONK KAK JI | PA-1-964-035 | 001001084194 |
| 17. | SISTER NO.1 SO COOL-NIKKA JIT GE | SR-735-000 | 100000367108 |
| 18. | SISTER NO.1 SO COOL-GA SIK GEOL | SR-735-000 | 100000042590 |

| 19. | SISTER NO.1 SO COOL-PUSH PUSH | SR-735-000 | 100000367105 |
|---|---|---|---|
| 20. | SISTER NO.1 SO COOL-SO COOL | SR-735-000 | 100000367109 |
| 21. | TEENTOP NO.1_repackage special edition_BAE A PA_Jealousy | SR-733-789 | 100000479440 |
| 22. | TEENTOP NO.1_repackage special edition_DAL KOM HAE_So Sweet | SR-733-789 | 100000415695 |
| 23. | TEENTOP NO.1_repackage special edition_GET CRAZY | SR-733-789 | 100000415696 |
| 24. | TEENTOP NO.1_repackage special edition_GIL EUL GEOT DA GA_Walk By | SR-733-789 | 100000479439 |
| 25. | TEENTOP NO.1_repackage special edition_GIN SAENG MEO RI GEU NYEO_Miss Right | SR-733-789 | 100000415681 |
| 26. | TEENTOP NO.1_repackage special edition_HELLO | SR-733-789 | 100000415692 |
| 27. | TEENTOP NO.1_repackage special edition_Mr. BANG_Feat_Maboos_CHAKU N | SR-733-789 | 100000415698 |
| 28. | TEENTOP NO.1_repackage special edition_NEO TTAEM E MOT SAL A_Mad At U | SR-733-789 | 100000415694 |
| 29. | TEENTOP NO.1_repackage special edition_No_1 | SR-733-789 | 100000415679 |
| 30. | TEENTOP NO.1_repackage special edition_SA RANG HA GO SIP EO_I Wanna Love | SR-733-789 | 100000415684 |
| 31. | TEENTOP NO.1_repackage special edition_WAE_Why | SR-733-789 | 100000415690 |
| 32. | GO HAE | SR-740-303 | 010000058659 |
| 33. | SA RANG A | PA-1-964-033 | 100001270790 |

22. I have requested to Korean Copyright Association, Legal Department, for its cooperation and support for further discovery.

Pursuant to 28 U.S. Code Section 1746, I, Changene Song, certifies under penalty of perjury that the aforementioned statement is true and correct.

Dated: 9, 1, 2020

Respectfully Submitted,

By: _____
CHANGENE SONG

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ELOHIM EPF USA, INC.

                  Plaintiff(s),

        - against -

162 D & Y CORP, et al.

                 Defendant(s),
----------------------------------------------------------X

```
┌───────────────────────────────┐
│ USDC SDNY                      │
│ DOCUMENT                       │
│ ELECTRONICALLY FILED           │
│ DOC#:                          │
│ DATE FILED: 11/4/19            │
└───────────────────────────────┘
```

1:19   Civ. 02431 ( AJN )

**CLERK'S CERTIFICATE
OF DEFAULT**

      I, RUBY J. KRAJICK, Clerk of the United States District Court for

the Southern District of New York, do hereby certify that this action was commenced on
March 19, 2019 with the filing of a summons and complaint, a copy of the summons and
complaint was served on defendant(s) Bizmax NY, Inc. d/b/a Wow Karaoke
by personally serving Alan Park, Manager on April 23, 2019 ;
*and proof of service was therefore filed on* October 31, 2019 *, Doc. #(s)* 28 .

I further certify that the docket entries indicate that the defendant(s) has not filed an

answer or otherwise moved with respect to the complaint herein. The default of the

defendant(s) is/are hereby noted.

Dated: New York, New York

    NOV 4 , 20 19

                                      RUBY J. KRAJICK
                                      Clerk of Court

                   By:    *Kmango*
                              Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ELOHIM EPF USA, INC.

                  Plaintiff(s),

  · - against -

162 D & Y CORP, et al.

                  Defendant(s),

------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  11/4/19
```

1:19   Civ. $\underline{02431}$ (AJN)

CLERK'S CERTIFICATE
OF DEFAULT

        I, RUBY J. KRAJICK, Clerk of the United States District Court for

the Southern District of New York, do hereby certify that this action was commenced on

March 19, 2019 _____ with the filing of a summons and complaint, a copy of the summons and

complaint was served on defendant(s) Hye Kyung Han on April 23, 2019 _____

by personally serving Michelle Bae, coworker and mailing a copy on April 24, 2019 _____,

and proof of service was therefore filed on October 31, 2019, Doc. #(s) 30 _____.

I further certify that the docket entries indicate that the defendant(s) has not filed an

answer or otherwise moved with respect to the complaint herein. The default of the

defendant(s) is/are hereby noted.

Dated: New York, New York

    NOV 4, 20 19

                             RUBY J. KRAJICK
                             Clerk of Court

                   By: _____
                             Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ELOHIM EPF USA, INC.

                                    Plaintiff(s),

                - against -

162 D & Y CORP, et al.

                                    Defendant(s),
--------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/4/19

1:19  Civ. 02431 (AJN)

CLERK'S CERTIFICATE
OF DEFAULT

I, RUBY J. KRAJICK, Clerk of the United States District Court for

the Southern District of New York, do hereby certify that this action was commenced on

March 19, 2019 with the filing of a summons and complaint, a copy of the summons and

complaint was served on defendant(s) Jin E An on April 17, 2019

by personally serving Kaden Lee, Manager and depositing a copy in mail on April 18, 2019 ,

*and proof of service was therefore filed on* October 31, 2019 *, Doc. #(s)* 31 *.*

I further certify that the docket entries indicate that the defendant(s) has not filed an

answer or otherwise moved with respect to the complaint herein. The default of the

defendant(s) is/are hereby noted.

Dated: New York, New York

      NOV 4 , 2019

                                    RUBY J. KRAJICK
                                    Clerk of Court

                          By: _____
                                    Deputy Clerk

SDNY Web 5/1/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ELOHIM EPF USA, INC.

                **Plaintiff(s),**

    - against -

162 D & Y CORP, et al.

                **Defendant(s),**
-------------------------------------------------------------X

USD...
DOC...
ELECTRONICALLY FILED
DOC...
DATE FILED  11/4/19

1:19  Civ.  02431  (AJN)

**CLERK'S CERTIFICATE
OF DEFAULT**

    I, RUBY J. KRAJICK, Clerk of the United States District Court for

the Southern District of New York, do hereby certify that this action was commenced on

March 19, 2019 with the filing of a summons and complaint, a copy of the summons and

complaint was served on defendant(s) Li Beom Kim on April 23, 2019

by personally serving Alan Park, coworker and depositing a copy in mail on April 24, 2019 ,

*and proof of service was therefore filed on* October 31, 2019 *, Doc. #(s)* 32 .

I further certify that the docket entries indicate that the defendant(s) has not filed an

answer or otherwise moved with respect to the complaint herein. The default of the

defendant(s) is/are hereby noted.

Dated: New York, New York

    NOV 4 , 2019

                                    **RUBY J. KRAJICK**
                                    Clerk of Court

                    By: _____
                               Deputy Clerk

USDISTRICT COURT
DOC
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/4/19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

ELOHIM EPF USA, INC.

              Plaintiff(s),

      - against -

162 D & Y CORP, et al.

              Defendant(s),
--------------------------------------------------------------X

1:19 Civ. 02431 (AJN)

**CLERK'S CERTIFICATE**
**OF DEFAULT**

I, RUBY J. KRAJICK, Clerk of the United States District Court for

the Southern District of New York, do hereby certify that this action was commenced on

March 19, 2019 with the filing of a summons and complaint, a copy of the summons and

complaint was served on defendant(s) M & S Music Studio d/b/a Gagopa Karaoke

by personally serving Michelle Bae, Manager on April 23, 2019 ,

and proof of service was therefore filed on October 31, 2019 , Doc. #(s) 33 .

I further certify that the docket entries indicate that the defendant(s) has not filed an

answer or otherwise moved with respect to the complaint herein. The default of the

defendant(s) is/are hereby noted.

Dated: New York, New York

    NOV 4 , 2019

                       RUBY J. KRAJICK
                       Clerk of Court

                 By: _____
                      Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ELOHIM EPF USA, INC.

               Plaintiff(s),

         - against -

162 D & Y CORP, et al.

               Defendant(s),

------------------------------------------------------------------X

1:19 ___ Civ. _02431_ (AJN)

**CLERK'S CERTIFICATE
OF DEFAULT**

I, RUBY J. KRAJICK, Clerk of the United States District Court for

the Southern District of New York, do hereby certify that this action was commenced on
March 19, 2019
_____ with the filing of a summons and complaint, a copy of the summons and

complaint was served on defendant(s) _Sing Sing Bell, Inc. d/b/a Christmas Karaoke_____.

by personally serving _Kaden Lee, Manager on April 17, 2019_____,

*and proof of service was therefore filed on* _October 31, 2019_, *Doc. #(s)* _35_____.

I further certify that the docket entries indicate that the defendant(s) has not filed an

answer or otherwise moved with respect to the complaint herein. The default of the

defendant(s) is/are hereby noted.

Dated: New York, New York

    _NOV 4_, 20_19_

                        RUBY J. KRAJICK
                        Clerk of Court

                   By: __Kmargo__
                       Deputy Clerk

# EXHIBIT B

## SUBPUBLISHING AGREEMENT

THIS AGREEMENT is made and entered into as of the 15ᵗʰ day of September, 2013 between ELOHIM EPF USA, INC. (individually and collectively, "Publisher"), whose address is 22904 Estroil Drive, Unit 3, Diamond Bar, CA 91756, on the one hand,

-and-

**ELOHIM EPF KOREA Ltd.** ("Owner"), whose address is 8F 851, Namjeon Bldg, Bongeunsa-ro, Gangnam-gu, Seoul Korea, on the other hand.

For and in consideration of the premises and mutual covenants, representations, warranties, agreements and obligations set forth herein, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.     **TERM; RETENTION PERIOD; COLLECTION PERIOD.**

(a)     The "Term" of this Agreement shall commence on the date hereof (the "Initial Period") and extending through June 30, 2018. Thereafter, the Term shall be automatically renewed and extended for successive consecutive periods of six (6) months each upon all the same terms and conditions set forth herein unless either party gives to the other party written notice of termination of the Term at least thirty (30) days prior to the end of the Initial Period or the then-current six (6) month period, as applicable.

(b)     The "Collection Period" shall commence upon the expiration of the Term and shall continue for a period of twelve (12) months. During the Collection Period, Publisher shall have the right to collect all monies earned from exploitations of the Compositions that occur prior to or during the Term, but shall not have the right to collect any monies earned from exploitations of the Compositions that occur after the expiration of the Term.

2.     **SUBPUBLISHING RIGHTS; THE COMPOSITIONS; TERRITORY.**

(a)     Owner hereby appoints Publisher, during the Term, Owner's exclusive agent to be the sole and exclusive subpublisher and administrator of all musical and/or lyrical works to the extent written, composed, created, owned, controlled and/or acquired, directly or indirectly, during the Term, by Owner, alone or in collaboration with another or others to the extent of Owner's interest therein, including, without limitation, those musical compositions specified on Schedule "A" attached hereto (the musical compositions described in this subparagraph 2(a), to the extent of Owner's interest therein, are hereafter individually referred to as a "Composition" and collectively referred to as "Compositions").

(b)     The "Territory" within which Publisher shall have the right to exercise the rights granted to Publisher hereunder shall be the United States and Canada.

Elohim 0026

3. **GRANT OF RIGHTS.**

(a) **Administration.** During the Term, and with respect to subparagraph 3(a)(iv) below, the Collection Period. Publisher and its Licensees shall have the sole and exclusive right throughout the Territory to:

(i) License, and cause others to license, the exploitation of the Compositions, including, without limitation, the right to license: (A) broadcast and other public performances; (B) the manufacture, distribution and sale of phonograph records and other audio-only configurations embodying any of the Compositions, at prevailing statutory or society rates, except where reduced rates are customarily granted (e.g., budget recordings, record clubs) in a country of the Territory, or where such rate has already been compromised by Owner; (C) the synchronization of the Compositions in connection with audiovisual works; (D) the dramatization of the Compositions; and (E) the use of the Compositions in connection with merchandising activities.

(ii) Administer and grant rights in the Compositions and the copyrights therein.

(iii) Print, publish and sell, alone or together with other works, printed editions or other reproductions of the Compositions.

(iv) Collect all monies earned during the Term, with respect to the Compositions, in addition to all monies earned prior to the date hereof but not yet paid to Owner, including, without limitation, the "publisher's share" of all public performance royalties payable to Owner with respect to the Compositions by ASCAP, BMI or any other applicable performing rights society, but excluding any songwriter share of public performance income. Publisher may register the Compositions with the applicable performing rights society in the joint names of Publisher and Owner for the duration of the Term and the Collection Period, if any. If Owner receives any monies of any kind or nature with respect to any of the Compositions, whether heretofore accrued and unpaid or hereafter accruing during the Term, Owner agrees to pay over to Publisher within five (5) business days of Owner's receipt thereof all such sums, together with an accounting statement summarizing such receipts and copies of the relevant portions of all accounting and royalty statements received by Owner in connection therewith.

(v) Make arrangements of or otherwise adapt, change or translate any of the Compositions in any manner, it being agreed that Owner's royalties shall not be reduced with respect to arrangements or foreign-language translations of any Composition except as prescribed by the rules of any applicable music rights society.

(vi) Issue universe-wide synchronization licenses for the right to record, reproduce, perform, represent and exhibit the Compositions by any method or media whether now known or hereafter devised (including, without limitation, on videocassettes, videodiscs or any similar device) in and/or in connection with radio, television, theatrical motion pictures, advertisements and other audiovisual works, if the same are produced and/or originate in the Territory, and make copies thereof and export such copies to all countries of the universe.

(vii) Since the Territory includes more than one (1) country, Publisher may enter into subpublishing or collection agreements with, or assign or license any of Publisher'



2
Subpublishing Elohim KOREA & Elohim USA_Subpublishing Agreement

Elohim 0027

rights hereunder and delegate any of Publisher's obligations hereunder to one or more other Persons for any one (1) or more countries of the Territory, including, without limitation, subsidiaries of and companies related to, affiliated with, or owned and/or controlled (in whole or in part) by Publisher, on such terms as may be deemed acceptable by Publisher.

(viii)    Bring legal action or proceedings against infringers of the United States or Canadian copyright, as set forth in paragraph 8, below.  Subpublisher is specifically authorized to bring legal action against entities involved in (1) the public performance, in any venue or establishment, of any of the Compositions with regard to karaoke machines or equipment; and (2) the unauthorized importation or sale of karaoke equipment, machines, chips, or any other sort of electronic device or instrument.

(b)    **Name and Likeness.**  Owner hereby grants Publisher and Publisher's Licensees the right to use, reproduce, print, publish or disseminate, in any medium, the names (including, without limitation, any and all professional, group and other assumed or fictitious names heretofore or hereafter adopted by the Songwriters of the Compositions), likenesses and biographical information concerning the Songwriters of the Compositions for the purposes of advertising, promotion and trade in connection with any uses, exploitations and/or promotions of the Compositions and for so-called "institutional advertisements" for Publisher's music publishing business, or to refrain therefrom.  Publisher agrees that any likenesses or biographical material of said Songwriters shall be subject to Owner's prior approval, which approval shall not be unreasonably withheld, provided that such approval shall be deemed given with respect to any such likenesses or biographical information provided by Owner to Publisher and provided further that such approval shall be deemed given with respect to any likenesses or biographical material for which Owner does not provide to Publisher specific written objection within ten (10) days after Publisher has requested that Owner approve any such likenesses or biographical material.  No casual or inadvertent failure by Publisher to obtain Owner's approval of any such likenesses or biographical material shall constitute a breach of this Agreement.

4.    **PAYMENTS.**  All royalties and other monies (if any) due hereunder shall be paid as follows:

> **ELOHIM EPF KOREA Ltd.**
> 8F 851, Namjeon Bldg, Bongeunsa-ro,
> Gangnam-gu, Seoul Korea

If the above address changes at any time during the Term and/or the Collection Period, then it shall be, in each instance, Owner's obligation to promptly notify Publisher in writing of Owner's new such address.

5.    **ROYALTIES.**  Publisher shall credit to Owner's account hereunder the following royalties with respect to the exploitation of the Compositions throughout the Territory, and, provided that Publisher has fully recouped any and all chargeable costs under this Agreement, Publisher shall pay to Owner the following royalties in accordance with the terms and conditions hereof:

(a)    **Public Performance Income.**  Fifty percent (50%) of Net Income derived from the publisher's share of public performance income.  If a performing rights society in any part of the Territory does not license any particular public performance use of a Composition, Publisher may

3

Subpublishing Elohim KOREA & Elohim USA_Subpublishing Agreement

Elohim 0028

license such use directly and all income received by Publisher in connection with such license shall be deemed Gross Income and subject to accounting hereunder.

(b) **Mechanical Income.** Fifty percent (50%) of Net Income derived from the license of the Compositions for use in phonograph records and other audio-only configurations.

(c) **Synchronization Income.** Fifty percent (50%) of Net Income derived from the license of the Compositions for use in commercials and sound synchronization in audiovisual works.

(d) **Print Income.**

(i) **Licensed Print.** Fifty percent (50%) of Net Income derived from the license of the right to print, publish or sell printed editions or other reproductions of the Compositions.

(ii) **Publisher Print.** If at any time Publisher enters the business of manufacturing and/or distributing printed editions of musical compositions, Net Receipts with respect to printed editions of the Compositions shall be deemed to be an amount equal to an industry-standard royalty payable by a third-party print licensee for the use concerned.

(e) **Other Income.** Fifty percent (50%) of Net Income derived from any exploitation of the Compositions not specifically referred to hereinabove.

(f) Publisher shall have the right, at Publisher's election, to directly license public performance rights and directly collect the fees derived therefrom, or to assign such rights to any person or entity having the legal right to issue any such license and collect the fees derived therefrom, on behalf of Publisher and Owner.

(g) Owner shall be solely responsible for the payment of any and all royalties or other monies due to songwriters, co-publishers, income participants and other third parties to whom Owner is obligated to pay a portion of the income from any of the Compositions. Owner hereby warrants and represents that all such songwriters, co-publishers, income participants and other third parties to whom Owner is obligated to pay a portion of the income from the Compositions shall look solely to Owner for any such payments of royalties or other monies and Owner hereby agrees to indemnify Publisher and hold Publisher harmless from and against any and all claims, demands or actions by any such songwriters, co-publishers, income participants and other third parties for any such payments in accordance with the terms of paragraph 8, below.

6. **ACCOUNTING.**

(a) Within ninety (90) days after the end of each of Publisher's then-current semi-annual accounting periods (currently ending on June 30th and December 31st of each year), Publisher shall compute the total composite royalties earned by Owner pursuant to this Agreement and will submit to Owner (or make available to Owner online) a detailed royalty statement for each such period together with the royalties, if any, that shall be payable under this Agreement. Publisher shall not be obligated to make any payment due hereunder if less than One Hundred Dollars ($100.00) is due to Owner with respect to the particular accounting statement involved. All royalty statements rendered by Publisher to Owner (or made available by Publisher to Owner online) shall be binding upon Owner and not subject to

4

Elohim 0029

any objection by Owner for any reason unless specific written objection, stating the basis thereof, is submitted by Owner to Publisher within two (2) years from the date such statement is rendered (or made available online or deemed rendered as provided below). For the purpose of calculating such time periods, a statement shall be deemed to have been rendered on the date when due unless, within sixty (60) days after the date such statement was due, Publisher receives written notice of non-receipt of such statement from Owner (or, if such statement was made available to Owner online, written notice of Owner's inability to access such statement online). Publisher's obligation of payment hereunder shall be subject to any rights and/or remedies which may be available to Publisher at law or in equity in the event of a breach or alleged breach of this Agreement by Owner.

(b)     An independent certified public accountant, who, individually, or whose firm, is not then engaged in an outstanding examination of any of Publisher's books and/or records, may, on Owner's behalf and at Owner's sole cost and expense, not more than once per year, examine Publisher's books and records that are maintained at Publisher's principal place of business in Los Angeles, California (or such other office as Publisher designates) solely insofar as such books and records concern royalties due to Owner hereunder, during Publisher's usual business hours at Publisher's principal place of business in Los Angeles, California (or such other office as Publisher designates) and upon at least thirty (30) days prior written notice, for the sole purpose of verifying the accuracy of any accounting statement rendered to Owner hereunder. Such accountant must execute a confidentiality agreement containing standard terms and conditions customarily required by Publisher, relating to Publisher's books and records before such accountant may proceed with any examination of any of Publisher's books or records, and such accountant must furnish to Publisher a copy of such accountant's draft audit report so that Publisher and said accountant may make any mutually agreeable adjustments prior to furnishing a final audit report to Owner and Publisher. Such audit shall be conducted in such a manner so as not to unreasonably disrupt Publisher's other functions and shall be completed promptly. Notwithstanding anything to the contrary expressed or implied herein, in no event will any accountant be entitled to examine any of Publisher's books or records that do not specifically report a particular, identifiable exploitation(s) of any Composition(s) as to which royalties are payable to Owner hereunder. Publisher's books and records relating to activities during any accounting period may only be examined once as aforesaid, during the two (2) year period following the date the statement for such accounting period is rendered to Owner (or deemed rendered to Owner as provided above). Owner shall be forever barred from bringing legal action or any other action or proceeding of any kind or nature with respect to a particular accounting statement unless that legal action or other action or proceeding is commenced in a court of competent jurisdiction within the aforesaid two (2) year period, and Owner hereby expressly waives any longer statute of limitations that may be permitted by any applicable law. In the event of the commencement of any action or proceeding relating to or arising out of any particular accounting statement(s) hereunder, the scope of such action or proceeding will be limited to the determination of the amount of royalties due with respect to each applicable accounting period, and the court will have no authority to consider any other issue or award any relief except the recovery of any royalties found owing. Owner's recovery of such royalties (if any) will be the sole remedy available to Owner by reason of any such claim, and, without in any way limiting the generality of the foregoing, Owner will have no right to seek termination of this Agreement or the avoidance of the performance of any of Owner's obligations hereunder by reason of any such claim.

7.     **WARRANTIES.**  Owner hereby warrants and represents that:  (a) Owner is and shall remain during the Term and the Collection Period, the sole owner of all of the rights granted hereunder in and to the Compositions; (b) Owner has the right, authority and capacity to enter into this Agreement

Subpublishing Elohim KOREA & Elohim USA_Subpublishing Agreement

5

Elohim 0030



and to grant to Publisher all of the rights granted herein; (c) the exercise by Publisher of any and all of the rights granted to Publisher in this Agreement will not violate or infringe upon any common law or statutory rights of any person, firm or corporation, including without limitation, contractual rights, copyrights and rights of privacy; (d) each Composition is an original work that is and shall remain during the Term and the Collection Period, subject to copyright protection throughout the Territory; (e) the rights granted herein are free and clear of any unrecouped advances, claims, demands, actions, liens or encumbrances; (f) there are no suits, claims, actions or other legal or administrative proceedings involving Owner and/or any of the Compositions now pending or threatened, nor is there any basis therefor; (g) there are no existing administration agreements or subpublishing agreements that are currently in effect in any country of the Territory with respect to any of the Compositions nor are there any remaining retention or collection rights with respect thereto; (h) there are no other agreements or commitments relating to any of the Compositions (and none shall be entered into during the Term or the Collection Period) that will in any way diminish, impair or delay any of Publisher's rights hereunder (including, without limitation, Publisher's rights with respect to the collection of income); (i) each Composition is and shall remain subject to the terms and conditions of this Agreement throughout the Term and the Collection Period and throughout the Territory; (j) during the Term (as the Term may be extended pursuant to the terms of this Agreement) and the Collection Period, Owner owns and shall continue to own all rights in and to each of the Compositions, including, without limitation, all copyrights and all renewals and extensions thereof throughout the Territory; and (k) Owner shall not exercise, nor shall Owner appoint or authorize any third party to exercise, any of the rights granted to Publisher hereunder.

## 8.   ACTIONS; INDEMNITY.

(a)     Publisher may take such action as it deems necessary, in Owner's name, Owner's name or in Publisher's own name, against any Person, Entity, or Firm to protect all rights and interests in connection with the Compositions and any and all other rights acquired by Publisher hereunder. Owner shall, at Publisher's request, cooperate fully with Publisher in any controversy which may arise or litigation which may be brought concerning the Compositions and any and all other rights acquired by Publisher hereunder. Publisher shall have the right (but not the obligation), in its absolute discretion, to retain attorneys and to institute or defend any action or proceeding and to take any other proper steps to protect the right, title and interest of Publisher in and to each of the Compositions, and every portion thereof, and in that connection, to settle, compromise or in any other manner dispose of any matter, claim, action or proceeding and to satisfy any judgment that may be rendered, in any manner as Publisher in its sole discretion may determine. Any legal action brought by Publisher against any alleged infringer of any of the Compositions shall be initiated and prosecuted by Publisher, in Publisher's name. If there is any recovery obtained by Publisher as a result thereof, after deduction of expenses incurred in connection with litigation, including, without limitation, attorneys' fees and court costs, a sum equal to the applicable percentage set forth in paragraph 5 above of such net proceeds that relate specifically to the Compositions shall be credited to Owner's account hereunder.



(b)     Owner agrees to and does hereby indemnify, save and hold Publisher harmless from any and all loss and damage (including, without limitation, attorneys' fees and legal costs) arising out of or connected with any claim that is inconsistent with any of the warranties, representations, covenants or agreements made by Owner in this Agreement, and Owner agrees to reimburse Publisher, on demand, for any payment made by Publisher at any time after the date hereof or any loss or damage of any kind or nature incurred by Publisher, with respect to any liability or claim to which the foregoing

Elohim 0031

indemnity applies. Pending the determination of any such claim, Publisher may withhold payment of royalties or other monies hereunder. Notwithstanding anything to the contrary contained above, Owner shall have the right to participate in the defense of any action relating to the Compositions at Owner's sole expense with counsel of Owner's choice: provided, however, that neither Owner nor Owner's counsel shall interfere with Publisher's control over the litigation or any discussions with respect to any such action.

9. **DEFINITIONS.** As used in this Agreement, the following terms shall have the meanings set forth below:

(a) **"Gross Income"** -- any and all revenue, income and sums directly and identifiably attributable by title to the exploitation of the Compositions in the Territory, less (i) any and all taxes paid by Publisher, (ii) any fees retained by mechanical or performing rights societies or non-affiliated collection agents, and (iii) the administration fee charged to Publisher by Publisher's United States administrator (to be retained by such administrator for its sole account); provided, however, that Gross Income shall not be deemed to include any advance payments, guarantee payments or minimum royalty payments that Publisher may receive unless any such payment relates solely to or is specifically allocable to the Compositions.

(b) **"Net Income"** -- Gross Income actually received by Publisher in the United States, less the costs actually incurred by Publisher in connection with the Compositions (the "Composition Costs") (including, without limitation, costs of lead sheets, copyright fees, sample clearance costs and fees paid to or charged by a third-party collecting agent for the licensing of the Compositions), but specifically excluding Publisher's general overhead expenses such as the salaries of Publisher's employees, rent and utilities.



(c) **"Licensees"** -- includes, without limitation, subsidiaries, wholly or partly owned, and divisions or affiliates of Publisher. Publisher warrants that it will deal on bona fide arms-length terms with its Licensees.

(d) **"Person"** -- any individual, corporation, partnership, entity, association or other organized group of persons, or the legal successors or representatives of the foregoing.

(e) **"Songwriter(s)"** -- all writers and composers of the Compositions, including, without limitation, Owner.

10. **NOTICES.** Except as otherwise specifically provided herein, all notices hereunder shall be in writing and shall be given by personal delivery, registered or certified mail, at the addresses shown above, or such other address or addresses as may be designated by either party hereto. Notices shall be deemed given two (2) days after being mailed, except that notice of a change of address shall be effective only from the date of its receipt. Each notice sent to Publisher shall be directed to it at the address listed above. Royalty statements and payments may be sent by ordinary mail. As to all matters treated herein to be determined by mutual agreement or as to which any approval or consent is required, such agreement, approval or consent shall not be unreasonably withheld. Owner's agreement, approval or consent, whenever required, shall be deemed to have been given unless Owner notifies Publisher otherwise within ten (10) business days following the date of Publisher's written request therefor.

Elohim 0032

11.   **EXECUTION OF DOCUMENTS; POWER OF ATTORNEY.**

(a)     Owner shall execute and deliver to Publisher such instruments of transfer and other documents regarding the rights of Publisher in the Compositions subject to this Agreement as Publisher may reasonably request to carry out the purposes of this Agreement (including, without limitation, Direction Letter attached hereto as "Exhibit A" attached hereto), and if Owner fails to do so within ten (10) business days following Publisher's written request therefor, Publisher may sign such documents in Owner's name.

(b)     Owner hereby irrevocably constitutes, authorizes, empowers and appoints Publisher (or any of Publisher's officers), during the Term and the Collection Period, Owner's true and lawful agent and attorney-in-fact (with full power of substitution and delegation) to make, execute, sign, acknowledge and deliver any and all documents, instruments and writings in Publisher's and/or Owner's name and to take any other action in Publisher's and/or Owner's name which in the reasonable judgment and discretion of Publisher is necessary or desirable to carry out the purposes of this Agreement, including, without limitation, the following: (i) to prepare, execute, file and register claims of copyright in the Compositions and to the extent applicable, renewals and extensions in the name of Owner as copyright proprietor; (ii) to collect royalties, monies, payments and all other compensation and/or advances with respect to the Compositions throughout the Territory heretofore accrued and unpaid and hereafter accruing during the Term, to receive all accounting and royalty statements in connection with the foregoing and to execute and deliver receipts for any and all such collections if necessary to do so; (iii) to endorse all checks and drafts received by Publisher with respect to the Compositions and to deposit all such checks, drafts and other receipts in Publisher's account; (iv) to collect all monies and payments arising from or in connection with settlement agreements of any kind or nature executed by Owner with respect to the Compositions, to execute and deliver receipts for such monies or payments and to endorse and deposit checks and drafts and all other receipts in connection with the foregoing in Publisher's account; and (v) to bring legal action for the infringement of the United States and/or Canadian copyrights in the Compositions, and to settle and compromise such claims, in Publisher's reasonable discretion.  Publisher shall furthermore have the right, power and authority to execute any and all other or additional documents, instruments or other writings that Publisher reasonably deems necessary or desirable to carry out any of the foregoing acts in the name of and for the benefit of Owner and/or Publisher.  The powers herein granted to Publisher are coupled with an interest and, during the Term and the Collection Period, are irrevocable for any cause whatsoever.



12.     **DELIVERY.**  Concurrently with Owner's execution of this Agreement, Owner shall supply Publisher with the following (to the extent they exist) with respect to each Composition: A lead sheet or printed music copy and all other necessary information concerning the Compositions, including, without limitation, copyright registration certificates, licensing or other agreements (and a separate summary of the details of the type of and term of any exclusivity provisions that are currently in effect with respect to the Compositions), print agreements, music cue sheets and any other documents, licenses, agreements and correspondence relating to the Compositions. Owner further agrees to notify Publisher of each version of any of the Compositions that is recorded during the Term as soon as is reasonably practicable after Owner becomes aware thereof.  If and to the extent that Owner fails to provide to Publisher any or all of the materials and information referred to above, Publisher's rights in and to the Compositions shall not be impaired and, in addition to any other rights and remedies available to Publisher, Publisher shall not be responsible for any non-collection of monies or lack of copyright

8

Subpublishing Elohim KOREA & Elohim USA_Subpublishing Agreement

Elohim 0033

protection with respect to the affected Composition that is the direct or indirect result of any such failure by Owner.

13.   **MISCELLANEOUS.**

　　(a)   This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof and cannot be changed or terminated except by an instrument signed by an officer of Publisher and Owner. A waiver by either party of any term or condition of this Agreement in any instance shall not be deemed or construed as a waiver of such term or condition for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained in this Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either party.

　　(b)   Each party hereto may assign this Agreement to any Person or Publisher acquiring all or a substantial part of the assigning party's stock and/or assets: provided, however, that the assigning party shall remain liable hereunder. The assigning party shall send written notice of such assignment to the other, but a failure to do so shall not invalidate the assignment. However, Publisher's right to assign or license some of its rights hereunder in the ordinary course of business shall not be so limited.

　　(c)   Owner shall not be entitled to recover damages or impose on Publisher any other remedy by reason of any remediable breach by Publisher of Publisher's obligations hereunder, unless Publisher has failed to remedy such breach within thirty (30) days following receipt of Owner's written notice thereof. Publisher shall not be entitled to recover damages or impose on Owner any other remedy by reason of any remediable breach by Owner of Owner's obligations hereunder unless Owner has failed to remedy such breach within thirty (30) days following Owner's receipt of Publisher's notice thereof. Notwithstanding anything to the contrary contained in this paragraph, there shall be no "cure" period in connection with any breach of any obligation that is not capable of cure.



　　(d)   This Agreement shall be governed by and construed under the laws and judicial decisions of the State of California. Only the California courts (state and federal) in Los Angeles County, California will have jurisdiction of any controversies relating to or arising out of this Agreement, any action or other proceeding that involves such a controversy will be brought in such courts and not elsewhere, and the parties hereto consent to the jurisdiction of such courts. Any process in any such action or proceeding may be served upon Owner by, among other methods, delivering it or mailing it, by registered or certified mail, return receipt requested, directed to the address first above written. Any such delivery or mail service shall be deemed to have the same force and effect as personal service within the State of California.

　　(e)   In entering into this Agreement, and in providing services pursuant hereto, Owner shall have the status of an independent contractor and nothing herein contained shall contemplate or constitute Owner as Publisher's agent or employee.

　　(f)   This Agreement shall not become effective until executed by all proposed parties hereto.

　　(g)   Any and all exhibits and schedules annexed hereto are incorporated herein by this reference, and, together with this basic document, shall be taken together to constitute the Agreement between Owner and Publisher.

9
Subpublishing Elohim KOREA & Elohim USA_Subpublishing Agreement

Elohim 0034

EXHIBIT "A"

DIRECTION LETTER

TO:   ALL RECORD MANUFACTURERS          TO:   HARRY FOX AGENCY
      LICENSED TO MECHANICALLY
      REPRODUCE COMPOSITIONS            TO:   ALL OTHER PARTIES
      SPECIFIED HEREINBELOW                   IN INTEREST

Please be advised that effective as of July 1, 2013, we have granted to Elohim EPF USA, INC. ("Subpublisher"), whose address is 22904 Estroil Drive, Unit 3, Diamond Bar, CA 91756, its licensees and assigns, the exclusive right in the United States and Canada with respect to all musical compositions listed on Schedule "A" annexed hereto and all other musical compositions that are currently and that will become subject to the Subpublishing Agreement dated as of July 1, 2013 between Subpublisher and the undersigned (all such musical compositions being referred to as the "Compositions"):

1.    To license and cause others to license the use of the Compositions;

2.    To administer and grant rights in and to the Compositions and the copyrights therein;

3.    To publish and sell sheet music and/or folios of the Compositions if it so elects;

4.    To collect all monies payable with respect to the Compositions, including monies earned but not paid prior to the effective date hereof; and

5.    To otherwise administer the Compositions and the copyrights therein and to act as the publishers thereof.

6.    To bring any and all legal actions and/or proceedings with regard to infringements of the United States or Canadian copyrights in and to the Compositions, or any of them, and to settle or compromise said actions and/or proceedings in the discretion of Subpublisher.

The foregoing authorization and direction shall remain in full force and effect until modified or terminated by both the undersigned and the Subpublisher.

Very truly yours,

ELOHIM EPF KOREA Ltd.
("Publisher")

By: _____

An Authorized Signatory

13
Elohim KOREA & Elohim USA_Subpublishing Agreement

Elohim 0035

(h)     No person or entity is deemed or intended to be a third-party beneficiary hereof and this Agreement shall not be deemed to give any right or remedy to any third party whatsoever unless such status, right or remedy is specifically granted to such third party by the terms hereof. Nothing contained herein shall constitute a partnership, joint venture or fiduciary relationship between the parties hereto. Neither party hereto shall hold itself out contrary to the terms of this paragraph and neither party shall become liable for any obligation, act or omission of the other party contrary to the provisions hereof. The obligations of each person and/or entity comprising Owner hereunder shall be joint and several.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

"PUBLISHER"

ELOHIM EPF USA, INC.

By: Chong Yun Cha, C.E.O

By: Soonbo Yoo, President

09/15/2013
Date fully executed

"OWNER"

ELOHIM EPF KOREA Ltd.

By: Hwa Young Chang, President

**UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF NEW YORK**

ELOHIM EPF USA, INC., a California
Corporation,

                Plaintiff,

       -v-

162 D& Y CORP., a New York corporation d/b/a
FLOWER KARAOKE; DONG HYUN HA, an
individual; MANHA TT AN ZILLER ZILLER,
INC., a New York corporation d/b/a K2
KARAOKE; YURIND LEE, and individual; Y &P
BAYSIDE CORP., a New York corporation d/b/a
HAPPY KARAOKE; PHIL SOOK CHO, an
individual; SING SING BELL, INC., a New York
corporation d/b/a CHRISTMAS KARAOKE; JIN E
AN, an individual; MUSICBOX KTV, INC., a
New York corporation d/b/a MUSICBOX K-TV;
ANTHONY KIM, an individual; M & S MUSIC
STUDIO INC., a New York corporation d/b/a
GAGOPA KARAOKE; HYE KYUNG HAN, an
individual; SS NOBLESSE HOUSE, INC., a New
York corporation d/b/a NOBLESSE HOUSE;
YINGHUA HUANG, an individual; PLACE OF
HAPPY & LUCKY INC., a New York corporation
d/b/a THE KING KARAOKE; GUNHA SONG, an
individual; NORAE HAHNUN JIB CORP., a New
York corporation d/b/a OPEN KARAOKE; DONG
HYUN HA, an individual; BIZMAX NY, INC., a
New York corporation d/b/a WOW KARAOKE;
LI BEOM KIM, an individual; HARMONY
KARAOKE KTV, INC., a New York corporation
d/b/a HARMONY KARAOKE; JOSEPH N.
ZOINO, an individual; SWEETIE & VIP, INC., a
New York corporation d/b/a I LUV LUXURY
ROOM; KYUNG A. CHUNG, an individual; YS2
ENTERPRISES, INC., a New York corporation
d/b/a CEO BUSINESS CLUB; HYUN HAK YI, an

Case No.: **19 CV
02431 (AJN)**

**PROPOSED
ORDER OF
MOTION TO
VACATE ENTRY
OF DEFAULT
PURSUANT TO
FED. R. CIV. P.
55(c)**

GLOBAL CORP, a New York corporation d/b/a
RED; DAVID RHEE, an individual; SOMETHING
1, INC., a New York corporation d/b/a
SOMETHING; SUNNY TAE KIM, an individual,
SAGWA NAMOO, INC., a New York corporation
d/b/a SAGWA NAMOO; KYUNG SOON NAM,

an individual; TOMATO 162, INC., a New York
corporation d/b/a TOMA TO KARAOKE ROOM;
SUNG LAW KIM, an individual; and DOES 1
through 20, inclusive

                    Defendants

Upon the motion of Amit Deshmukh, Esq., of Desh Law LLC, counsel for Defendants,

Sing Sing Bell, Inc., a New York Corporation d/b/a Christmas Karaoke, Jin E. An, an

individual, Music Studio, Inc., a New York Corporation d/b/a Gagopa Karaoke, Hye Kyung

Han, an individual, Bizmax NY, Inc., a New York Corporation d/b/a Wow Karaoke, and

Kibeom Kim, an individual in the above-referenced action, and the Court having considered

the proofs and arguments presented, and for good cause shown:

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion is

GRANTED. It is further **ORDERED AND ADJUDGED** that:

(1) Clerk's Certificate of Default against Defendants, D.E. 51, D.E. 53, D.E. 54, D.E. 55, D.E.

56, D.E. 58 are VACATED;

(2) The Clerk of the Court shall administratively re-open the present case for the above-

referenced Defendants.

(3) Defendants will answer the complaint within _____ days.


Dated: _____        _____
                              THE HONORABLE ALISON J. NATHAN
                              UNITED STATES DISTRICT JUDGE