UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/4/21

Elohim EPF USA, Inc.,

                    Plaintiff,

         —v—

162 D & Y Corp., *et al.*,

                    Defendants.

19-cv-2431 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

This copyright infringement action was initiated in March 2019. In November 2019, the Clerk's Office issued certificates of default against some of the defendants. Several months later, some of those defendants appeared. On September 10, 2020, Defendants Sing Sing Bell, Inc., d/b/a Christmas Karaoke; Jin E. An; M & S Music Studio, Inc., d/b/a Gagopa Karaoke; Hye Kyung Han; Bizmax NY, Inc., d/b/a Wow Karaoke; and Li Beom Kim (collectively, the "Defaulted Defendants") moved to vacate the entry of default against them. Dkt. No. 133. Plaintiff opposes the motion. For the reasons that follow, the motion to vacate entry of default is GRANTED.

## I.    Background

Plaintiff Elohim EPF USA, Inc. is the subpublisher for thousands of Korean musical compositions. According to Elohim, it enjoys exclusive rights to administer those compositions in the United States. The Defendants in this case, meanwhile, are all either "karaoke bars" or individuals who own, manage, or work at those establishments. Elohim argues that none of the Defendants have licensing agreements with Elohim but that they nonetheless display or broadcast certain songs in their establishments. Elohim thus alleges that the Defendants are

liable for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, and inducement of copyright infringement.

Elohim filed its original Complaint in March 2019. Dkt. No. 1. The Complaint has since been amended twice. *See* Dkt. Nos. 71, 140. Some of the Defendants entered an appearance or otherwise responded to the Complaint. Others did not, despite having been validly served. The Defaulted Defendants fall into this latter group. In November 2019, Elohim requested certificates of default against them, which the Clerk's office issued. *See* Dkt. Nos. 51, 53, 54, 55, 56, 58.

On February 4, 2021—almost a year after the lawsuit was originally filed and three months after the certificates of default were issued—counsel for the Defaulted Defendants noticed an appearance. Dkt. No. 80. However, the Defaulted Defendants took no further action until September 10, 2020, when they filed this motion, which requests that the Court set aside the defaults that had been entered against them pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. Dkt. No. 133 ("Def. Br."). The motion is fully briefed. *See* Dkt. Nos. 134 ("Pl. Opp'n Br."), 137 ("Reply").

## II.     Legal Standard

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . ., the clerk must enter the party's default." After such default is entered, however, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The standard for vacating a default is more lenient than that for a default judgment, but the "good cause" factors are the same for both. *See Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir. 1981); *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1993). To determine whether "good cause" exists, courts assess three

criteria: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC,* 779 F.3d 182, 186 (2d Cir. 2015) (quoting *Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir. 2013)). The Second Circuit has expressed a strong "preference for resolving disputes on the merits." *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508, 514 (2d Cir. 2001)).

## III. Discussion

The Court considers each "good cause" factor in turn below and concludes that, on balance and in light of the "strong preference" in this Circuit for resolving cases on their merits, these factors weigh in favor of vacating the defaults.

### A. Prejudice

The Court considers the last "good cause" factor first, because "[p]rejudice to the nondefaulting party is 'the single most persuasive reason for denying a Rule 55(c) motion. . . .'" *Murray Eng'g, P.C. v. Windermere Properties LLC,* No. 12-cv-52 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013) (quoting Wright & Miller, Federal Practice and Procedure § 2699 (3d ed. 2010)). Delay, standing alone, does not establish prejudice for purposes of a request to set aside an entry of default. *Enron Oil*, 10 F.3d at 98. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks omitted).

Plaintiff's only claim of prejudice is one of delay. It asserts that setting aside the defaults "will prolong the Defaulted Defendants' unauthorized uses of [Plaintiff's] musical compositions

3

and will result in further prejudice to [Plaintiff]." Pl. Opp'n Br. at 7. The only claim, that is, is that the alleged infringement may continue for longer if the default is vacated since the case will proceed to be resolved on the merits. But the mere possibility that delaying the resolution of this case may defer Plaintiff's ability to get the relief it seeks in this litigation is insufficient, particularly in light of the strong policy reasons favoring resolving cases on the merits. Accordingly, this factor weighs in favor of vacating the defaults.

### B. Willfulness of Default

The next factor—willfulness of the default—also weighs in favor of vacating the defaults. Willfulness in this context means more than mere negligence or carelessness; it refers to conduct that is "egregious" and "not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). An inference of willful default is warranted if a defendant "does not deny that he received the complaint, the court's orders, . . . or that he never answered the complaint," and "does not contend that his non-compliance was due to circumstances beyond his control." *Guggenheim Capital, LLC,* 722 F.3d at 455. "[D]efaults have been found willful where, for example, an attorney failed, for unexplained reasons, to respond to a motion for summary judgment, or failed, for flimsy reasons, to comply with scheduling orders. . . ." *McNulty*, 137 F.3d at 738–39 (internal citations omitted). An attorney's willful conduct is imputed to the party he represents where the party "makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." *Id.* at 740. So, for instance, when a party does "not talk to his attorney for nearly a year, and . . . receive[s] no bills during that time to indicate that any attention [i]s being given to his case," it is appropriate to impute the attorney's willful default to the client. *Id.*

The Defaulted Defendants concede that they were aware of this lawsuit, but they claim that their failure to appear was the result of a misunderstanding. According to them, as early as April 2019, the Defaulted Defendants met with "corporate counsel" for purposes of retaining representation in this matter. Def. Br. at 7; *see also* Changene Song Affidavit, Dkt. No. 133 at 32, ¶¶ 5–9. Corporate counsel responded that their firm did not handle federal cases in New York, but they indicated that they would refer the case to an outside law firm. *Id.* The Defendants then reached an agreement with the referral law firm, but due to an alleged miscommunication, the referral law firm misinterpreted corporate counsel's assertion that they would join the case by *pro hac vice* as an indication that the Defaulted Defendants would retain corporate counsel to represent them in this matter instead of the referral law firm. *Id.* The Defaulted Defendants claim that they did not notice this mistake until they were in default, and that upon noticing, they retained their current counsel who then entered a notice of appearance. *Id.*

Plaintiff raises the separate point that even if the defaults were not willful, their failure to promptly move to vacate the default after discovering that no counsel had entered an appearance nonetheless merits a finding of willfulness. Though the Defaulted Defendants' counsel entered an appearance on February 4, 2020, Dkt. No. 80, they did not move to vacate the default until September 2020—over seven months later. Defaulted Defendants' counsel explains that this was due to several circumstances, including delays effected by the COVID-19 pandemic and the death of a close mentor, which resulted in counsel having to take over some of his mentor's work. Reply at 2. He also points to language barriers, time zone issues, and logistical issues that further interfered with his ability to respond in a timely fashion. *Id.* While at least some of those

explanations provide reasonable justification for *some* delay, counsel does not explain why he failed to notify the Court or request an extension.

The Defaulted Defendants' behavior was at least negligent. Even accepting the fact of the misunderstanding as true and drawing all inferences in the Defaulted Defendants' favor, the Defaulted Defendants do not explain why it took them nearly a year to find out that no one had entered an appearance or why they were not made aware when they received no bills during this time period that would indicate that attention was being given to the case. *See McNulty*, 137 F.3d at 740.

But the Court cannot conclude—in light of their explanations and resolving all doubts in their favor—that their actions were willful. Corporate counsel assumed the referral law firm had entered an appearance, while the referral law firm believed corporate counsel to be representing the Defaulted Defendants. Having conferred with their attorneys, meanwhile, the Defaulted Defendants assumed that an appearance had been entered in this matter—a serious mistake, but not necessarily one that rises to the level of willfulness. And while the seven month delay in moving to vacate the default was ultimately unwarranted, the Court is persuaded that a number of the factors counsel identified—most notably the delays caused by the COVID-19 pandemic—provide sufficient grounds to conclude that that delay was not willful. Thus, though it is a close call, after resolving all doubts in the Defaulted Defendants' favor the Court concludes that this factor favors vacating the defaults.

### C. Meritorious Defenses

Finally, the existence of potentially meritorious defenses also favors vacating the default. In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, *see,*

*e.g., Davis v. Musler,* 713 F.2d at 916, but he must present evidence of facts that, "if proven at trial, would constitute a complete defense." *S.E.C. v. McNulty,* 137 F.3d 732, 740 (2d Cir. 1998) (citing *Enron Oil Corp. v. Diakuhara,* 10 F.3d at 98).

The Defaulted Defendants raise a number of defenses that they claim surpass this low bar. *See* Def. Br. at 9–14. Most notably, they argue that due to the nature of the karaoke bars in question—particularly their use of private viewing rooms—they will be able to challenge that the karaoke bars engage in public performance or display for purposes of a copyright infringement claim. This claim is potentially meritorious and is ultimately a question of fact. The nature of the performances, that is, may persuade a reasonable factfinder that the performances are akin to either "private movie-viewing rooms in a public establishment" or "movies presented in hotel guests' individual rooms," which could potentially lead to different conclusions regarding infringement. *Lee v. Karaoke City*, No. 18-CV-3895 (PAE), 2020 WL 5105176, at *8 (S.D.N.Y. Aug. 31, 2020) (discussing cases). To decide that question requires a degree of fact-finding that would be improper at this stage. *See id.* ("Discovery will presumably reveal and allow the parties to examine with specificity the manner in which karaoke performances occur in defendants' establishments, permitting this issue to be resolved either on summary judgment or at trial."). At this juncture, the Court is persuaded that it is a *potentially* meritorious defense. Thus, the Court need not reach the rest of the Defaulted Defendants' arguments to conclude that this factor favors vacating the defaults.

### D.  Balance of the factors

As already noted, there is a strong preference in this Circuit for resolving disputes on the merits. *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995). All three factors in this case favor vacating the defaults. Though the Court ultimately concludes that the Defaulted

Defendants' defaults were *not* willful, a contrary conclusion would not alter the balance of the factors, which would still weigh in favor of vacating the defaults. *See Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 341 (S.D.N.Y. 2013) (collecting cases in which vacatur was warranted in spite of willfulness of the default). The Court would also resolve any doubt as to whether the defaults should be vacated in the Defaulted Defendants' favor and vacate the defaults nonetheless. *See Enron Oil Corp.*, 10 F.3d at 96. The strong policy reasons that disfavor default bolster the Court's conclusion that vacatur of the defaults under Rule 55(c) is proper here.

## IV.     Conclusion

For the reasons stated above, the Defaulted Defendants' motion is GRANTED, and the certificates of default against the Defaulted Defendants, Dkt. Nos. 51, 53, 54, 55, 56, 58, are VACATED. The Defaulted Defendants are ORDERED to respond to Plaintiff's Second Amended Complaint within 14 days of this order.

This resolves Dkt. No. 133.

SO ORDERED.

Dated: June 4, 2021
        New York, New York

_____
            ALISON J. NATHAN
        United States District Judge