1
2
3
4
5
6
7

**TESSER | GROSSMAN LLP**
11990 San Vicente Boulevard, Suite 300
Los Angeles, California 90049
Telephone: (310) 207-4558
BRANDON M. TESSER (SBN 168476)
brandon@tessergrossman.com
Attorneys for Plaintiff
ELOHIM EPF USA, INC.

8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF NEW YORK

10
11
12
13
14
15
16
17

| | |
|---|---|
| ELOHIM EPF USA, INC., a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> 162 D & Y CORP., a New York corporation d/b/a FLOWER KARAOKE, *et al.* <br><br> Defendants. | Case No.: 1:19-cv-02431-AJN <br><br> **PLAINTIFF ELOHIM EPF USA, INC.'S TRIAL BRIEF** <br><br> Date: July 14, 2023 <br> Time: 10:00 a.m. <br> Dept.: 11D |

18     ///
19     ///
20     ///
21     ///
22     ///
23     ///
24     ///
25     ///
26
27
28

Pursuant to the Court's June 1, 2023 Order [ECF 309], plaintiff Elohim EPF

USA, Inc. ("Elohim") submits the following Trial Brief.

I. **INTRODUCTION**

This is an action for intentional copyright infringement brought pursuant to 17 U.S.C. §101 et. Seq. (the "Copyright Act") arising from the unauthorized public performance and public display of 16 musical compositions to which Elohim has exclusive rights. Elohim registered the musical compositions (the "Registered Compositions") with the United States Copyright Office ("USCO") prior to filing this lawsuit. [Trial Affidavit of David Cha ("Cha Decl."), ¶ 11 **Exhibits "F"** to **"U"** (USCO Copyright Certificates)].

The infringement described herein occurred on various occasions in early 2018 and more recently at karaoke establishments owned and operated by defendants: 162 D & Y Corp. d/b/a Flower Karaoke ("Flower Karaoke"), Y & P Bayside Corp. d/b/a Happy Karaoke ("Happy Karaoke"), Musicbox KTV, Inc. d/b/a Music Box K-TV ("Music Box K-TV"), SS Noblesse House, Inc. d/b/a Noblesse House ("Noblesse House"), Place of Happy & Lucky, Inc. d/b/a The King Karaoke ("The King Karaoke"), YS2 Enterprises, Inc. d/b/a CEO Business Club ("CEO Business Club"), Sagwa Namoo, Inc. d/b/a Sagwa Namoo ("Sagwa Namoo"), Open Karaoke Corp. d/b/a Open Karaoke ("Open Karaoke"), Whitestone Bell, Inc. d/b/a I Luv Luxury Room ("I Luv Luxury Room"), Base Karaoke, Inc. d/b/a Base Karaoke ("Base Karaoke"), Sing Sing Bell, Inc. d/b/a Christmas Karaoke ("Christmas Karaoke"), M & S. Music Studio, Inc. d/b/a Gagopa Karaoke ("Gagopa Karaoke"), and Bizmax NY, Inc. d/b/a Wow Karaoke ("Wow Karaoke") (collectively, the "Establishment Defendants"), as well as Dong Hyun Ha, Phil Sook Cho, Hyun Hak Yi, Kyung Soon Nam, Anthony Kim, Kyung A. Chung, Ku Ho You, Winnie H. Chung, Dong Hun Kim, Jin E. An, Hye Kyung Han, and Li Beom Kim (collectively, the "Individual Defendants"). The Establishment Defendants and the Individual Defendants are collectively the "Defendants."

///

///

Several defendants are not new to copyright infringement actions.[1]  To them copyright infringement lawsuits are a cost of doing business.  Thus, the only way to curb Defendants' willful infringement is to award Elohim the maximum statutory damages allowed by law.

## II.    PROCEDURAL HISTORY

### The Defaulted Defendants

Elohim filed this action on March 19, 2019.  [ECF 1 (Complaint)].  On January 20, 2023, Elohim filed a Motion for Default Judgment as to defendants Norae Hahnun Jib d/b/a Open Karaoke ("Norae Hahnun Jib"), Sweetie & VIP, Inc. d/b/a I Luv Luxury Room ("Sweetie"), and G S Global Corp. d/b/a Red ("G S Global") (collectively, the "Defaulted Defendants") [ECF 291].  On April 26, 2023, the Court granted Elohim's Motion for Default Judgment as to liability but deferred its decision on Elohim's application for damages and injunctive relief subject to a "trial record and any damages awarded by a jury [which] will be useful to the Court in determining the appropriate statutory damages to be paid by the three defaulting defendants."  [ECF 306].  The Court concluded that Elohim demonstrated its entitlement to the entry of default judgment as to liability because: (i) Elohim's chairman and CEO visited the establishments owned and operated by Open Karaoke, Sweetie, and Global, where he publicly performed karaoke on compositions for which Elohim had U.S. copyright registrations; (ii) the Defaulted Defendants infringed Elohim's exclusive copyrights by making its compositions available for public performance without first obtaining a license; and (iii) the Defaulted Defendants continued to exploit Elohim's compositions after they

---

[1] For example, in *Beom Su Lee v. 162 D&Y Corp. d/b/a Flower Karaoke*, 1:18-cv-02580-BMC-PK (E.D.N.Y.), Flower Karaoke, Happy Karaoke, Open Karaoke, Christmas Karaoke, Sagwa Namoo, and CEO Business Club are defendants.  Judgments were entered against them on January 17, 2023.  [ECF 123].  In *Beom Su Lee v. Karaoke City*, 1:18-cv-03895-PAE-SDA (S.D.N.Y.), Gagopa Karaoke and Wow Karaoke are defendants.

received cease-and-desist letters and were served with the Complaint in this action. [*Ibid*].

### Defendants Change Course and Agree to a Bench Trial

The Court deferred its decision regarding Elohim's request for damages and for injunctive relief against the Defaulted Defendants because the Defendants were opposed to a bench trial. However, on May 31, 2023, Defendants changed course and requested a Stipulation to waive a jury trial. [ECF 307 (Letter)]. On May 31, 2023, the Court accepted the Stipulation and Ordered a bench trial. [ECF 308 (Order)].

## III. STATEMENT OF FACTS

### A. Elohim is the Owner of the Registered Compositions

On September 15, 2013, Elohim entered into a Subpublishing Agreement with Elohim EPF Korea Ltd. ("Elohim Korea"). [Cha Decl., ¶ 69 **Exhibit "A"** (Elohim Korea Subpublishing Agreement)]. This agreement granted Elohim the exclusive right to administer in North America "all musical and/or lyrical [Elohim Korea] works to the extent written, composed, created, owned, controlled and/or acquired, directly or indirectly, during the Term by [Elohim Korea]… without limitation…" [**Exhibit "A"** at ¶ 2(a)]. Elohim's administration rights include the right to register the Elohim Korea musical compositions with the USCO. [**Exhibit "A"** at ¶ 3((a)(ii) and **Exhibit A ¶ 2**]. Elohim Korea provided Elohim with the underlying songwriter agreements granting Elohim Korea administration rights in South Korea. These agreements include writer agreements for Dong Cheol Kang, Kyung Sik Ma, and Kab Won Choi/Su Jong Park. [Cha Decl., ¶ 67 **Exhibit "D"** (Certified English Translations of Songwriter Agreements)].

Thus agreed, Elohim registered the following musical compositions with the USCO: (i) Gin Sang Meo Ri Geu Nyeo; (ii) My Boy; (iii) So Cool; (iv) Push Push; (v) Gudaewa Hamke; (vi) Neomanul Nukimyeo; (vii) Sal Man Jji Go; (viii) Ni Kka Jit Ge; (ix) Ga Sik Geol; (x) Bae A Pa; (xi) Gil Eul Geot Da Ga; (xii) Sa Rang Ha

Go Sip Eo; (xiii) Love Attack; and (xiv) Hot Boy.  [Cha Decl., ¶ 11 **Exhibits "F"** to **Exhibit "I"** and **Exhibits "L"** to **"U"** (USCO Registration Certificates)].

On September 15, 2013, Elohim entered into a Subpublishing Agreement with Prime M&E Co. Ltd. f/k/a Taejin Media ("Prime M&E").  [Declaration of David Cha ("Cha Decl."), ¶ 70 **Exhibit "B"** (Prime M&E Subpublishing Agreement)].  This agreement granted Elohim the exclusive right to administer in North America "all musical and/or lyrical [Prime M&E] works to the extent written, composed, created, owned, controlled and/or acquired, directly or indirectly, during the Term by [Prime M&E]… without limitation…"  [**Exhibit "B"** at ¶ 2(a)]. Elohim's administration rights include the right to register Prime M&E musical compositions with the USCO.  [**Exhibit "B"** at ¶ 3((a)(ii) and **Exhibit B** ¶ 2].  Prime M&E provided Elohim with the underlying songwriter agreements granting Prime M&E administration rights in South Korea.  These agreements include a writer agreement for Young Jin Seo.  [Cha Decl., ¶ 67 **Exhibit "D"** (Certified English Translation of Songwriter Agreement)].

Thus agreed, Elohim registered the following musical compositions with the USCO: (i) Gudaewa Hamke; and (ii) Neomanul Nukimyeo.  [Cha Decl., ¶ 11 **Exhibits "J"** and **Exhibit "K"** (USCO Registration Certificates)].

As set forth below, Elohim is the "copyright claimant" and therefore the copyright owner of the Registered Compositions as a matter of law.  [Cha Decl. **Exhibits "F"** to **"U"**].

### B. <u>The Establishment Defendants Are Open to the Public and Profit from the Use of Karaoke Machines</u>

It is uncontested that the Establishment Defendants are karaoke bars open to the public where alcoholic beverages, non-alcoholic beverages, and food are served. [ECF 304-1 (Joint Statement of Additional Uncontested Facts Nos. 1-13)].

///

Customers perform karaoke in the Defendants' establishments as follows:

After a customer selects a musical composition, the sound equipment plays the instrumental music accompanying such musical composition. [ECF 287 (Joint Pre-Trial Order Uncontested Facts, 4:25-26]. Additionally, a video monitor displays the lyrics of that musical composition, so that the viewer can sing the lyrics along with the music of that musical composition. [*Id*. at 4:27-5:2].

It is uncontested that the Establishment Defendants charge customers money to access rooms with karaoke machines. [ECF 304-1 (Joint Statement of Additional Uncontested Facts Nos. 14-15]. Therefore, Defendants profit from the use of the karaoke machines given that customers come to their establishments to use the machines and perform the Registered Compositions. [*See* Request for Judicial Notice ("RJN") **Exhibit "1"** (October 1, 2015 Order in *Elohim EPF USA, Inc. v. Total Music Connection, Inc., et al.*, CV 13-02496-BRO (Ex)) (Holding that Korean karaoke establishments profit from the use of karaoke machines given that customers go to the establishments to use the machines and perform the copyright owner's musical works)].

**C.    The Individual Defendants are Responsible for the Operation of the Establishment Defendants Including Their Licensing Requirements**

It is uncontested that the Individual Defendants are responsible for the overall operation of the Establishment Defendants including their licensing requirements. [ECF 287 (Joint Pre-Trial Order Uncontested Facts at 5:3-7:16)]. This includes the ability to direct and control the activities of the karaoke establishments, the customers' ability to publicly perform and display the Registered Compositions, and the right and ability to supervise the persons who work at the establishments.

Elohim never granted the Defendants licenses to use the Registered Compositions in their establishments. [Cha Decl., ¶ 10].

///

///

**D.**    **Elohim's Agents Publicly Performed the Registered Compositions and Publicly Displayed Their Lyrics in the Defendants' Karaoke Establishments**

The following Registered Compositions were publicly performed and displayed at the Establishment Defendants' premises.

**1.**    **Infringement by 162 D & Y Corp. (dba Flower Karaoke)**

The following Registered Compositions were publicly performed and displayed at Flower Karaoke on February 27, 2018 (Song Nos. 7; 9-13):[2]

    a.  Sal Man Jji Go (7);

    b.  Ga Sik Geol (9);

    c.  Bae A Pa (10);

    d.  Gil Eul Geot Da Ga (11);

    e.  Sa Rang Ha Go Sip Eo (12);

    f.  Love Attack (13).

[Cha Decl., ¶ 20 **Exhibit "Y"**; Declaration of In Sung Park ("Park Decl."), ¶ 6 **Exhibit "Y"**; Declaration of Nam Hyun Yoo ("Yoo Decl."), ¶ 6 **Exhibit "Y"**].

**2.**    **Infringement by Y & P Bayside Corp. (dba Happy Karaoke)**

The following Registered Compositions were publicly performed and displayed at Happy Karaoke on February 27, 2018 (Song Nos. 3, 7, 10-13).

    a.  So Cool (3);

    b.  Sal Man Jji Go (7);

    c.  Ga Sik Geol (9);

    d.  Bae A Pa (10);

    e.  Eil Eul Geot Da Ga (11);

    f.  Sa Rang Ha Go Sip Eo (12);

---

[2] The song numbers listed in parentheses to the right of each song title correspond with the chart set forth in paragraph 11 of the concurrently filed Affidavit of David Cha.

1        g.  Love Attack (13).

2  [Cha Decl., ¶ 24 **Exhibit "Z"**; Park Decl., ¶ 10 **Exhibit "Z"**; Yoo Decl., ¶ 10

3  **Exhibit "Z"**].

4       **3.**  **Infringement by Musicbox KTV, Inc. (dba Music Box K-**

5  **TV)**

6    The following Registered Compositions were publicly performed and

7  displayed at Music Box K-TV on February 27, 2018 (Song Nos. 1, 3, 4, 6-8, 10-

8  13).

9        a.  Gin Sang Meo Ri Geu Nyeo (1);

10       b.  So Cool (3);

11       c.  Push Push (4);

12       d.  Neomanul Nukimyeo (6);

13       e.  Sal Man Jji Go (7);

14       f.  Ni Kka Jit Ge (8);

15       g.  Bae A Pa (10);

16       h.  Gil Eul Geot Da Ga (11);

17       i.  Sa Rang Ha Go Sip Eo (12);

18       j.  Love Attack (13).

19  [Cha Decl., ¶ 28 **Exhibit "AA"**; Park Decl., ¶ 14 **Exhibit "AA"**; Yoo Decl., ¶ 14

20  **Exhibit "AA"**].

21     **4.**  **Infringement by SS Noblesse House, Inc. (dba Noblesse**

22  **Karaoke)**

23    The following Registered Compositions were publicly performed and

24  displayed at SS Noblesse Karaoke on February 28, 2018 (Song Nos. 1, 4, 7, 9, 10-

25  13).

26       a.  Gin San Meo Ri Geu Nyeo (1);

27       b.  Push Push (4);

28       c.  Sal Man Jji Go (7);

d.  Ga Sik Geol (9);

e.  Bae A Pa (10);

f.  Gil Eul Geot Da Ga (11);

g.  Sa Rang Ha Go Sip Eo (12);

h.  Love Attack (13).

[Cha Decl., ¶ 32 **Exhibit "BB"**; Park Decl., ¶ 18 **Exhibit "BB"**; Yoo Decl., ¶ 18 **Exhibit "BB"**].

5.  <u>**Infringement by Place of Happy & Lucky, Inc. (dba The King Karaoke)**</u>

The following Registered Compositions were publicly performed and displayed at The King Karaoke on February 28, 2018 (Song Nos. 1, 4, 6-9, 11-13).

a.  Gin San Meo Ri Geu Nyeo (1);

b.  Push Push (4);

c.  Neomanul Nukimyeo (6);

d.  Sal Man Jji Go (7);

e.  Ni Kka Jit Ge (8);

f.  Ga Sik Geol (9);

g.  Gil Eul Geot Da Ga (11);

h.  Sa Rang Ha Go Sip Eo (12);

i.  Love Attack (13).

[Cha Decl., ¶ 36 **Exhibit "CC"**; Park Decl., ¶ 22 **Exhibit "CC"**; Yoo Decl., ¶ 22 **Exhibit "CC"**].

6.  <u>**Infringement by YS2 Enterprises, Inc. (dba CEO Business Club)**</u>

The following Registered Compositions were publicly performed and displayed at CEO Business Club on February 28, 2018 and September 10, 2021 (Song Nos. 9 and 11).

a.  Ga Sik Geol (9)

b. Gil Eul Geot Da Ga (11)

[Cha Decl., ¶ 40 **Exhibit "DD"**; Park Decl., ¶ 26 **Exhibit "DD"**; Yoo Decl., ¶ 26 **Exhibit "DD"**; Declaration of Sun Man Hwang ("Hwang Decl."), ¶ 6 **Exhibit "DD"**].

### 7. Infringement by Sagwa Namoo, Inc. (dba Sagwa Namoo)

The following Registered Compositions were publicly performed and displayed at Sagwa Namoo on February 28, 2018 (Song Nos. 13 and 14).

a. Love Attack (13)

b. Hot Boy (14)

[Cha Decl., ¶ 44 **Exhibit "EE"**; Park Decl., ¶ 30 **Exhibit "EE"**; Yoo Decl., ¶ 30 **Exhibit "EE"**].

### 8. Infringement by Whitestone Bell, Inc. (dba I Luv Luxury Room Café)

The following Registered Compositions were publicly performed and displayed at Open Karaoke on February 28, 2018 (Song No. 8).

a. Gudaewa Hamke (8)

[Cha Decl., ¶ 48 **Exhibit "FF"**; Park Decl., ¶ 34 **Exhibit "FF"**; Yoo Decl., ¶ 34 **Exhibit "FF"**].

### 9. Infringement by Base Karaoke, Inc. (dba K-2 Karaoke fka Base Karaoke)

The following Registered Compositions were publicly performed and displayed at K-2 Karaoke on March 8, 2018 (Song Nos. 1, 3, ,4, 6, 7, 9, 10-13).

a. Gin San Meo Ri Geu Nyeo (1);

b. So Cool (3);

c. Push Push (4);

d. Neomanul Nukimyeo (6);

e. Sal Man Jji Go (7);

f. Ga Sik Geol (9);

g.  Bae A Pa (10);

h.  Gil Eul Geot Da Ga (11);

i.  Sa Rang Ha Go Sip Eo (12);

j.   Love Attack (13).

[Cha Decl., ¶ 52 **Exhibit "GG"**; Park Decl., ¶ 38 **Exhibit "GG"**; Yoo Decl., ¶ 38 **Exhibit "GG"**].

### 10.    Infringement by Open Karaoke Corp. (dba Yulrin Karaoke a/k/a Open Karaoke)

The following Registered Compositions were publicly performed and displayed at Yulrin Karaoke on February 28, 2018 (Song Nos. 6-13).

a.  Neomanul Nukimyeo (6);

b.  Sal Man Jji Go (7);

c.  Ni Kka Jit Ge (8);

d.  Ga Sik Geol (9);

e.  Bae A Pa (10);

f.  Gil Eul Geot Da Ga (11);

g.  Sa Rang Ha GO Sip Eo (12);

h.  Love Attack (13).

[Cha Decl., ¶ 56 **Exhibit "HH"**; Park Decl., ¶ 42 **Exhibit "HH"**; Yoo Decl., ¶ 42 **Exhibit "HH"**].

### 11.    Infringement by Sing Sing Bell, Inc. (dba Christmas Karaoke)

The following Registered Compositions were publicly performed and displayed at Christmas Karaoke on March 8, 2018 (Song Nos. 1, 3, 5, 7, and 10).

a.  Gin Sang Meo Ri Geu Nyeo (1);

b.  So Cool (3);

c.  Gudaewa Hamke (5);

d.  Sal Man Jji Go (7);

e.  Bae A Pa (10).

[Cha Decl., ¶ 60 **Exhibit "II"**; Park Decl., ¶ 46 **Exhibit "II"**; Yoo Decl., ¶ 46 **Exhibit "II"**].

### 12.    Infringement by Bizmax NY, Inc. (dba Wow Karaoke)

The following Registered Compositions were publicly performed and displayed at Wow Karaoke on March 8, 2018 (Song Nos. 1, 3, 4, 6-13).

a.  Gin Sang Meo Ri Geu Nyeo (1);

b.  So Cool (3);

c.  Push Push (4);

d.  Neomanul Nukimyeo (6);

e.  Sal Man Jji Go (7);

f.  Ni Kka Jit Ge (8);

g.  Ga Sik Geol (9);

h.  Bae A Pa (10);

i.  Gil Eul Geot Da Ga (11);

j.  Sa Rang Ha Go Sip Eo (12);

k.  Love Attack (13).

[Cha Decl., ¶ 64 **Exhibit "JJ"**; Park Decl., ¶ 50 **Exhibit "JJ"**; Yoo Decl., ¶ 50 **Exhibit "JJ"**].

### 13.    Infringement by M & S Music Studio, Inc. (dba Gagopa Karaoke)

The following Registered Compositions were publicly performed and displayed at Gagopa Karaoke on September 10, 2021 (Song Nos. 1, 4, 6, 7, 9, 10, 12-14).

a.  Gin Sang Meo Ri Geu Nyeo (1);

b.  Push Push (4);

c.  Neomanul Nukimyeo (6);

d.  Sal Man Jji Go (7);

e.   Ga Sik Geol (9);

f.   Bae A Pa (10);

g.   Sa Rang Ha Go Sip Eo (12);

h.   Love Attack (13);

i.   Hot Boy (14).

[Hwang Decl., ¶ 10 **Exhibit "KK"**; Yoo Decl., ¶ 54 **Exhibit "KK"**].

## IV.   ARGUMENT

### A.   Elohim's First Claim for Direct Copyright Infringement

To prevail on a claim for direct copyright infringement, Elohim must demonstrate: "(1) ownership of a valid copyright, and (2) unauthorized copying of the copyrighted work or some other violation of the exclusive rights afforded to the owner by the Copyright Act. *Feist Publ'ns Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991); *Entral Grp. Int'l, LLC v. N.Y. One Café Inc.*, No. 05-CV-1655 (CPS), 2007 WL 869587, at *2 (E.D.N.Y. Mar. 20, 2007); *see Lee v. Karaoke City*, No. 18 CV-3895 (PAE) (SDA), 2020 WL 9815181, at *3 (S.D.N.Y. Dec. 18, 2020). As it applies to musical compositions, the Copyright Act provides that "the owner of a copyright . . . has exclusive rights to do and to authorize" the public performance and public display of the copyrighted work.  17 U.S.C. § 106.   In addition, karaoke machines that project song lyrics in real time with accompanying music meet the statutory definition of "audiovisual works" subject to protection under the Copyright Act.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 527 (9th Cir. 2008).

### 1.   Elohim is the Owner of the Registered Compositions

Defendants admit that Elohim registered the following 14 musical compositions with the USCO within five years of first publication: (i) Gin Sang Meo Ri Geu Nyeo; (ii) My Boy; (iii) So Cool; (iv) Push Push; (v) Gudaewa Hamke; (vi) Neomanul Nukimyeo; (vii) Sal Man Jji Go; (viii) Ni Kka Jit Ge; (ix) Ga Sik Geol; (x) Bae A Pa; (xi) Gil Eul Geot Da Ga; (xii) Sa Rang Ha Go Sip Eo; (xiii)

Love Attack; and (xiv) Hot Boy (collectively, the "Presumptively Valid Compositions"). [ECF 287 (Joint Pre-Trial Order, 4:8-13)]. Because the USCO issued certificates of registration within five years of first publication, the certificates "constitute *prima facie* evidence of the validity of the copyright in the facts stated in the certificate." 17 U.S.C. § 410(c); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) ("A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright, although that presumption of ownership may be rebutted."); See *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) (Same); *Town & Country Linen Corp. v. Ingenious Designs LLC*, 436 F.Supp.3d 653, 664 (S.D.N.Y. 2020) (Same). Furthermore, each certificate of registration on its face shows that Elohim is the "Copyright Claimant." [Cha Decl., ¶ 11 **Exhibits "F" to "U"** (USCO Registration Certificates)]. As such, Elohim is the owner of the Presumptively Valid Compositions, and the burden is on Defendants to show that Elohim does not have valid copyrights. *Durham Industries, Inc., supra*, 630 F.2d at 908.

Defendants also admit that Elohim registered the songs Jeong Sin I Na Gat Eot Na Bwa and Hoe Sang with the USCO although these songs were not registered within five years of first publication. [ECF 287 (Joint Pre-Trial Order Uncontested Facts at 4:14-16)]. Elohim is the copyright owner of these compositions because Elohim has full chain of title for these and the Presumptively Valid Compositions. As to Jeong Sin I Na Gat Eot Na Bwa, chain of title is proven by the Dong Cheol Kang songwriter agreements with Elohim Korea, the Subpublishing Agreement between Elohim Korea and Elohim, and the corresponding USCO registration certificate. [Cha Decl., **Exhibit "D"** (Songwriter Agreements), **Exhibit "A"** (Elohim Subpublishing Agreement), and **Exhibit "T"** (USCO Registration Certificate)]. As to Hoe Sang, chain of title is proven by the Kyung Sik Ma songwriter agreements with Elohim Korea, the Subpublishing Agreement between Elohim Korea and Elohim, and its corresponding USCO registration certificate.

[Cha Decl., **Exhibit "D"** (Songwriter Agreements), **Exhibit "A"** (Elohim Subpublishing Agreement), and **Exhibit "U"** (USCO Registration Certificate)].

## 2. <u>Defendants Infringed Elohim's Copyrights Through Multiple Instances of Public Performance and Public Display</u>

Under 17 U.S.C. § 501, liability for copyright infringement exists if an individual or entity "violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122…" 17 U.S.C. § 501(a). Among the rights conveyed to a copyright owner under Section 106 are the rights to "(1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; … (4) perform the work publicly; and (5) display the work publicly." *Elektra Ent. Grp., Inc. v. Barker*, 551 F.Supp.2d 234, 241 (S.D.N.Y. 2008) (Quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992).

Here, the second element of copyright infringement, copying (*i.e.*, the public performance and display of the Registered Compositions), is established by the Affidavits of Elohim's agents, David Cha, Nam Hyun Yoo, In Sung Park, and Sun Man Hwang who visited the Establishment Defendants and: (i) observed and engaged in the performance and display of certain Registered Compositions at each establishment, as specifically described in their respective Affidavits; and (ii) took photographs of either the song titles of the Registered Compositions and/or a portion of the lyrics of the compositions displayed on the karaoke video monitor confirming the public performance and display of the Registered Compositions. [Cha Decl., ¶¶ 17-64 **Exhibits "Y"** to **"JJ"**; Park Decl., ¶¶ 3-50 **Exhibits "Y"** to **"JJ"**; Yoo Decl., ¶¶ 3-54 **Exhibits "Y"** to **"KK"**; and Hwang Decl., ¶¶ 3-10 **Exhibits "DD"** and **"KK"** (Photographs)].

Importantly, courts in the Central District of California **and the Southern District of New York** have found that karaoke performed in **Korean-style** karaoke

establishments constitutes public performance under the Copyright Act.  In *Beom Su Lee v. 162 D & Y Corp. (d/b/a Flower Karaoke)*[3] 1:18-cv-02580-BMC-PK, Magistrate Judge Peggy Kuo found that karaoke performed in Korean-style karaoke bars is publicly performed under the Copyright Act.  [ECF 120 (Report and Recommendation, Pg. 10]; See *Beom Su Lee v. Karaoke City*, 18-CV-3895 (PAE) (SDA), 2019 WL 2451430 (S.D.N.Y. Apr. 22, 2019) (Playing copyrighted musical works at defendants' karaoke establishments constituted public performance) Citing *Lee v. eBay*, 2:17-CV-05179-SVW-E, 2018 WL 1941974, at *2 ("Case law is clear that karaoke constitutes a public performance.").

One week ago, in *Elohim EPF USA, Inc. v. 600 N. Vermont, et al.*, CV 22-7516-MWF (KSx) (C.D.C.A.), Judge Michael W. Fitzgerald found that karaoke performed in Korean-style karaoke bars is publicly performed under 17 U.S.C. § 101.  Judge Fitzgerald ruled:

> Karaoke performed in commercial karaoke establishments that are open to the public constitutes "public performance" under 17 U.S.C. § 101, regardless of whether the karaoke is performed in private rooms. Unlike hotel rooms which provide living accommodations and a substantial expectation of privacy, karaoke rooms provide customers with a temporary space to sing, eat, and drink.  There is no evidence that the purpose of Entity Defendants' establishments is to provide a degree of privacy similar to customers' homes.  Instead, Entity Defendants' karaoke rooms are more akin to hotel meeting rooms, also typically available for short term rentals, which the Ninth Circuit in *Columbia Pictures Industries, Inc.* distinguished from guest rooms.  866 F.2d at 281. Accordingly, the Court determines that karaoke performed at Defendants' establishments is publicly performed under 17 U.S.C. § 101.

[RJN **Exhibit "3"** (Judge Fitzgerald Ruling)].

In *Lee v. eBay*, No. 17-CV-05179 (SVW), 2018 WL 194174 at *4 (C.D. Cal. 2018), Judge Stephen V. Wilson ruled:

---

[3] As set forth more fully below, several defendants are serial infringers and are defendants in similar actions brought by unrelated copyright holders.

Caselaw is clear that karaoke constitutes a public performance. *See Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193 (10th Cir. 2005); *Broadcast Music, Inc. v. Zendejas Colton, Inc.*, CV 06-1111 SVW (C.D. Cal. Oct. 18, 2006); *Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, No. CV 14—02496-BRO, 2015 WL 12655556 (C.D. Cal. Oct. 1, 2015). A restaurant owner or operator who hosts karaoke performances may be liable for copyright infringement for failing to obtain a license for such performances. *Zendejas Colton, Inc.*, CV 06-1111 SVW (C.D. Cal. Oct. 18, 2006).

**\*\*\*\***

In *Columbia Pictures Industries, Inc. v. Redd Horne, Inc.*, 749 F.2d 154 (3d Cir. 1984), the defendants operated a video rental store, where any customer could pay a fee to rent an individual viewing booth within the store to watch the movie. Defendants argued that this was not a public performance. *Id.* The Third Circuit disagreed, reasoning that the relevant "place" within the meaning of Section 101 of the Copyright Act was the video rental store itself, not the individual booth within the store. *Id.* The Third Circuit concluded that "[s]imply because the cassettes can be viewed in private does not mitigate the essential fact that the [video rental store] is unquestionably open to the public." *Id*; *see also Columbia Pictures Indus., Inc. v. Aveco, Inc.*, 800 F.2d 59 (3d Cir. 1986) ("Performances of motion pictures at video cassette rental business' stores were "public" and thus, infringed copyrights where business was willing to make viewing room and video cassette available to any member of public with inclination to avail himself of service.")

**\*\*\*\***

In *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 866 F.2d 278, 281 (9th Cir. 1989), the Ninth Circuit distinguished the private viewing rooms in *Redd Horne* and *Aveco* from viewing movies in a hotel room. **The Ninth Circuit held that the question of hotel rooms "differs from those in *Aveco* and *Redd Horne* because its 'nature' is the providing of living accommodations and general hotel services," where individuals enjoy a substantial degree of privacy**. *Id.* **This holding leads the Court to believe the Ninth Circuit inherently agrees with the Third Circuit's reasoning in *Redd Horne* and *Aveco*.**

**\*\*\*\***

The Court finds Defendant's argument unavailing. Similar to the video rental stores in *Redd Horne* and *Aveco*, any member of the public could pay the karaoke room rental-fee to perform songs at Defendants' establishments. Although Defendants' customers can sing

their karaoke songs in private rooms, the existence of private rooms does not diminish the fact that these establishments are open to the public. **Because Defendants' karaoke bars and clubs are public places, the "public" element of a "public performance" is satisfied, even if the customers may sing karaoke somewhat privately.**

[RJN **Exhibit "2"** (Judge Wilson Ruling)].  (Emphasis added.)

In *Elohim EPF USA, Inc. v. Total Music Connection*, CV 14-02496-BRO (Ex), Judge Beverly Reid O'Connell ruled as follows:

Defendants argue that customers performing in the private karaoke rooms are not public performances because the rooms are private.  Under the Copyright Act, "public" means "to perform or display [the copyrighted work] at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered." 17 U.S.C. §101. **Given that Defendants' establishments are open to the public, any performance of Plaintiffs' works at these establishments is done in "public."**

The foregoing New York and California rulings, which follow the rulings in various other jurisdictions, are clear: karaoke performed in Korean-style karaoke establishments is "performed publicly" under 17 U.S.C. §101.  Importantly, the copyright infringement by the Defendants in this case is identical to the copyright infringement in the above-referenced rulings.  The Establishment Defendants admit that: (i) they are commercial establishments; (ii) open to the public; (iii) they sell alcohol; (iv) charge customers to use rooms with karaoke machines; (v) provide customers with karaoke machines; and (vi) provide customers with rooms in their establishments for the customers to perform karaoke.  [ECF 304-1 (Joint Statement of Additional Uncontested Facts Nos. 1-16)].

Notably, all courts have ruled that the rooms inside Korean-style karaoke establishments are not like hotel rooms.  The comparison is absurd because, as Judge Fitzgerald and Judge Wilson point out in their rulings, the purpose of a hotel is to provide guests with living accommodations and an expectation of privacy whereas the purpose of karaoke establishments is to provide customers with a

temporary space to sing, eat, and drink as they would in a restaurant or as Judge Fitzgerald notes, a rented hotel meeting room.  [RJN **Exhibits "2"** and **"3"**].

As set forth more fully below, Defendants' direct copyright infringement entitles Elohim an award of statutory damages plus interest and attorney's fees as set forth below.  Elohim also seeks an order under 17 U.S.C. § 503 directing the impoundment, destruction, or other reasonable disposition of all infringing karaoke machines.

**B.    Elohim's Second Claim for Contributory Copyright Infringement**

A party is liable for contributory copyright infringement if, with knowledge of the infringing activity, it induces, causes, or materially contributes to the infringing conduct of another.  *Gerswin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  The requisite knowledge for contributory infringement liability may be actual or constructive.  *Faulkner v. Nat'l Geographic Soc'y*, 2011 F.Supp.2d 450, 474 (S.D.N.Y. 2002), *aff'd*, *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.2d 26 (2d Cir. 2005); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) ("Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement.") Turning a "blind eye" to infringement has also been found to be the equivalent of knowledge.  *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003). Thus, knowledge of specific infringements is not required to support a finding of contributory infringement.  *See Arista Records, Inc. v. Flea World, Inc.*, No. 03-2670 (JBS), 2006 WL 842883, at * 14 (D.N.J. Mar. 31, 2006).

As set forth above, Elohim is the copyright owner of the Registered Compositions, and it has the exclusive right to grant licenses for the public performance and display of the compositions in the United States.  Defendants admit that they charge customers to rent spaces and to access karaoke machines, which customers can use to publicly perform and display the Registered Compositions.  [ECF 304-1 (Joint Statement of Additional Uncontested Facts Nos.

1-16)].   Even though Defendants do not have licenses to use the Registered Compositions, Elohim's agents publicly performed them and displayed their lyrics as set forth above in section III B.   By providing customers with the space and ability (*i.e.*, by furnishing rooms with karaoke machines, video monitors, and sound systems to play recordings of the Registered Compositions) to publicly perform and to publicly display each of the Registered Compositions, Defendants have knowingly and systematically induced, caused, and materially contributed to and participated in the infringing activity.

Indeed, as business owners, Defendants know that they must have a license for the public performance and public display of the Registered Compositions in their establishments.   Prior to this litigation, Defendants were in receipt of cease and desist letters warning them to secure proper licensing for the Registered Compositions.   [Cha Decl., ¶ 71 **Exhibit "V"** (Cease and Desist Letters); *See* ECF No. 217 paragraphs 20 and 22-26 (Declarations of Individual Defendants wherein they acknowledge charging customers for using the rooms in their karaoke establishments, and wherein they acknowledge receipt of cease and desist letters from Elohim and its attorneys).   By knowingly providing customers unfettered access to publicly perform and publicly display the Registered Compositions, Defendants engaged in contributory copyright infringement.   Moreover, despite their knowledge that they lacked authorization to publicly perform and publicly display each of the Registered Compositions, Defendants knowingly, willfully, and intentionally continued to induce, cause, and materially contribute to the infringement of Elohim's rights by holding themselves out as karaoke bars and providing customers with rooms equipped to publicly perform and display each of the Registered Compositions in violation of Elohim's rights under Sections 105(4) and 106(5) of the Copyright Act.

Defendants' contributory copyright infringement entitles Elohim an award of statutory damages plus interest and attorney's fees as set forth below.   Elohim also

seeks an order under 17 U.S.C. § 503 directing the impoundment, destruction, or other reasonable disposition of all infringing karaoke machines.

### C.    Elohim's Third Claim for Vicarious Copyright Infringement

"A person is vicariously liable for copyright infringement if the person had (1) the right and ability to supervise the infringing activity, and (2) an obvious and direct financial interest in exploitation of the copyrighted materials." *Pado, Inc. v. SG Trademark Holding Co. LLC*, 537 F.Supp.3d 414, 429 (E.D.N.Y. 2021); See *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-931 (2005) (stating that a person "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it"); *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016) (Stating that a person is vicariously liable for copyright infringement if he had a "right and ability to supervise [that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials" (Quoting *Sofitel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)).

It is uncontested that the Defendants have the right and ability to supervise the infringing activity in the Establishment Defendants. Specifically, the Individual Defendants are "responsible for the overall operation" of the respective establishments. [ECF 287 (Joint Pre-Trial Order Uncontested Facts at 5:3-7:16)]. Indeed, each of the Individual Defendants is the president and/or manager of the Establishment Defendants, so they not only have the right and ability to supervise the infringing activity, but they also purport to describe how their respective establishments operate. [ECF 217 (Individual Defendants' Declarations, *passim*].

The Defendants also have an obvious and direct financial interest in the exploitation of the Registered Compositions. Judge O'Connell's ruling in the *Total Music Connection* case is instructive:

///

---

1
2
3
4
5
6

> While Defendants argue that they do not charge money for each use of the machines and thus that they only have a financial interest in the sales of food and drinks, they still profit from the use of the karaoke machines given that customers come to their establishments to use the machines and potentially perform Plaintiffs' works. As such, if Plaintiffs do indeed possess the exclusive right to publicly perform and display the musical compositions at issue, Defendants violated those rights by making the works available to the public in the indexes and songbooks of the karaoke machines placed within the private rooms in Defendants' establishments.

7  [RJN **Exhibit "1"** (Judge O'Connell Ruling)].

8  Here, **Defendants admit they have a financial interest in the exploitation**

9  **of the Registered Compositions** as businesses/owners/employees because, as each

10  of the Individual Defendants put it, "I charge customers for the duration of hours

11  they use and occupy the private rooms…" and "we charge customers rental fees for

12  the private rooms that they occupy and for any food and beverages that we serve

13  upon the customers…" [ECF 217 (Individual Defendants' Declarations, ¶¶ 20-21].

14  Defendants clearly have obvious and direct financial interests in the exploitation of

15  the Registered Compositions. They say so themselves.

16  Defendants' contributory copyright infringement entitles Elohim an award of

17  statutory damages plus interest and attorney's fees as set forth below. Elohim also

18  seeks an order under 17 U.S.C. § 503 directing the impoundment, destruction, or

19  other reasonable disposition of all infringing karaoke machines.

20  **D.    Elohim's Fourth Claim for Inducing Copyright Infringement**

21  One is liable for inducing copyright infringement by "providing a service

22  'with the object of promoting its use to infringe copyright.'" *Perfect 10, Inc. v. Visa*

23  *Int'l Serv.*, 494 F.3d 788, 796 (9th Cir. 2007) (Quoting *Metro-Goldwyn-Mayer*

24  *Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-937 (2005). To establish

25  inducement liability, the plaintiff must show that the defendant "'communicated an

26  inducing message to their … users,' the classic example of which is an

27  'advertisement or solicitation that broadcasts a message designed to stimulate others

28  to commit violations.'" (*Id.* at 937).

Defendants promote infringement of the Registered Compositions, and thereby their business, by holding themselves out as karaoke establishments and providing patrons with access to the Registered Compositions, as well as the ability to perform and display the Registered Compositions. [ECF 217 (Individual Defendants' Declarations, ¶ 3 (stating the Establishment Defendants are karaoke establishments)); ECF 287 (Joint Pre-Trial Order Admitted Facts at 2:22-3:5; ECF 304-1 (Joint Statement of Additional Uncontested Facts Nos. 1-15 (stating the Establishment Defendants are open to the public))]. In holding themselves out as karaoke establishments, Defendants send inducing messages to potential customers to come to the establishments for the purpose of publicly performing and publicly displaying the Registered Compositions.

Defendants' contributory copyright infringement entitles Elohim an award of statutory damages plus interest and attorney's fees as set forth below. Elohim also seeks an order under 17 U.S.C. § 503 directing the impoundment, destruction, or other reasonable disposition of all infringing karaoke machines.

## V.    THE COURT SHOULD ISSUE A PERMANENT INJUNCTION

The Copyright Act provides that the Court has the authority to issue a permanent injunction on such terms as it deems reasonable to prevent Defendants from their continued infringement of Elohim's copyright interests. See 17 U.S.C. §502(a). A permanent injunction is appropriate where a plaintiff shows: 1) irreparable harm; 2) that monetary damages are inadequate; 3) that the balance of hardships favors plaintiff; and 4) that an injunction would benefit the public interest. See *eBay Inc. v. MercExchange L.L.C.*, 547 U.S. 388, 391-92 (2006). All factors warranting a permanent injunction prohibiting Defendants from performing, or causing to be performed, any of the Registered Compositions are satisfied here.

///

///

### A.    Irreparable Harm and Inadequacy of Monetary Damages

The "jeopardy to a company's competitive position" caused by copyright infringement satisfies the irreparable harm requirement.  See *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 525-26 (9th Cir. 1984).  These intangible injuries are irreparable because quantifying their harm is impractical, and such injuries cannot be fully remedied with a financial award.  *MySpace, Inc. v. Wallace*, 498 Suppl. 2d 1293, 1305 (C.D. Cal. 2007).

Defendants' willful infringement of the Registered Compositions has jeopardized Elohim's competitive position and market share as Defendants are commercially exploiting the music - and doing so publicly and with perceived impunity - without compensating Elohim for said use.  [Cha Decl., *passim* and ¶¶ 10 and 71 **Exhibit "V"** (Cease and Desist Letters)]; See *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F.Supp. 656, 659 (S.D.N.Y. 1996) (Evidence that owners of bar infringed copyrighted musical compositions despite knowledge of the copyrights and continued to have copyrighted music performed at the bar without authorization warranted permanent injunction against unauthorized public performance of any copyrighted compositions licenses through plaintiff performing rights licensing authorization).

Thus, unless this Court orders a permanent injunction prohibiting Defendants from performing Elohim's compositions, its competitive position and market share will continue to be impaired.  As a result, an injunction is the only remedy available to Elohim to limit the potential for future injury.

### B.    The Balance of Hardship Favors Elohim

While Elohim will be severely harmed by the continued infringement, the harm to Defendants if injunctive relief is granted is remote.  While Defendants will be able to continue in business, they will simply have to do so without Elohim's musical compositions.  See *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997).  Therefore, any potential harm is slight in comparison to

the permanent and incalculable injury Elohim will suffer if an injunction is not issued.

### C.    Injunctive Relief Serves the Public Interest

It is "virtually axiomatic that the public interest can only be served by upholding copyright protections, and correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."  See *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983).

Here, an injunction would protect consumers from being deceived by Defendants' conduct.  Accordingly, the Court should grant an injunction prohibiting Defendants from performing, or causing to be performed, any of the Registered Compositions.

## VI.    <u>PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES</u>

Under the Copyright Act, the copyright owner is entitled to elect to recover statutory damages "any time before final judgment is entered" in lieu of actual damages and profits, "in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. §504(c)(1); See *Cranston Print Works Co. v. J. Mason Prods.*, 1998 WL 993657, at *6 (S.D.N.Y. July 27, 1998) ("Although the plaintiff's amended complaint does not request statutory damages under the Copyright Act . . . [plaintiff] may make such an election at any time before final judgment is entered") Citing 5 Melville Nimmer & David Nimmer, Nimmer on Copyright § 14.04[A]).  Moreover, where the copyright owner is able to establish willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. §504(c)(2).  Thus, in determining an award of statutory damages, a court must first address the question of willfulness.  "To prove 'willfulness' under the Copyright Act, the plaintiff must show 1) that the defendant was actually aware of the infringing activity, or 2) that the defendant's actions were the result of 'reckless disregard' for or 'willful

blindness' to the copyright holder's rights." *Island Software & Computer Serv., Inc. v. Microsoft Corp*. 413 F.3d 257, 263 (2d Cir. 2005); See also *Peer Int'l Corp.*, 909 F.2d at 1335-36.  Elohim will establish both at trial.

### A.    Defendants Willfully Infringed Elohim's Copyrights

On February 27 and 28, 2018 and September 10, 2021, the 16 Registered Compositions were publicly performed at the Defendants' karaoke establishments. [See Cha, Park, Hwang, and Yoo Declarations **Exhibits "F"** to **"KK"** (Photographs)].  Between August 1, 2017 and May 16, 2018, Elohim and its counsel sent cease and desist letters to each of the Defendants.  [Cha Decl. ¶ 71, **Exhibit "V"** (Cease and Desist Letters).]  On March 19, 2019, Plaintiff filed the instant action.  As set forth above, Plaintiff served the Defendants with the Summons and Complaint, but they did not cease their infringing conduct.  Elohim's CEO returned to Defendants' establishments in July 2019 and again publicly performed, or observed the public performance of the Registered Compositions and displayed their lyrics.  [Cha Decl. ¶ 65.]  None of the Defendants ceased their infringing conduct. [*Ibid*].

Thus, despite receipt of the cease and desist letters and the Complaint, Defendants persisted with their willful infringement.  See *Dolman v. Agee*, 157 F.3d 708, 714-715 (willful infringement established when defendant continued use of songs despite warnings that the use was not authorized); see also Nimmer on Copyright §14.04[B][3][a] ("reckless disregard can be inferred" where "defendant has defaulted").  It is apparent that Defendants brazenly see copyright infringement lawsuits as a cost of doing business.  They rather use copyrighted works without authorization and potentially defend lawsuits instead of paying administrators like Elohim so that songwriters can be paid for their work.

The Defaulted Defendants' infringement was willful not only because they received the letters and the Complaint, but also because they intentionally defaulted.

*All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F.Supp.2d 613, 621 (S.D.N.Y. 2011) (Defaulted defendants are willful infringers as a matter of law).

**B.     Statutory Damages Should Be Awarded Per Registered Composition Infringed**

"Statutory damages are to be awarded per work infringed, regardless of the number of times said work was infringed." *Seoul Broadcasting System Intern., Inc. v. John Kim Sang*, 754 F.Supp.2d 562, 567 (E.D.N.Y. 2010); *WB Music Corp. v. RTV Communication Group, Inc.*, 445 F.3d 538, 540 (2d Cir. 2006) (Quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 192-193 (1st Cir. 2004) ("[T]he total number of awards of statutory damages that a plaintiff may recover in any given action depends on the number of works that are infringed and the number of individually liable infringers, regardless of the number of infringements of those works"). Section "504(c)(1) disassociates the award of statutory damages from the number of infringements by stating that 'an award (singular tense) of statutory damages is available for 'all infringements involved in the action' regarding any one work." *WB Music Corp.*, *supra*, 445 F.3d at 540. Therefore, Elohim is entitled to an award of statutory damages **per work** (*i.e.*, musical composition) infringed. See *Seoul Broadcasting System Intern., Inc., supra*, 754 F.Supp. 2d at 567-568; See also *Warner/Chappell Music, Inc. v. Bertrant Music Ent. Inc.*, No. 3:12-0512 (M.D. Tenn. 2014) (Awarding $50,000 per musical work); *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574 (6th Cir. 2007) (Upholding Middle District of Tennessee award of $31,000 per musical work for willful infringement); *Sony BMG Music Entm't v. Tenenbaum*, 672 F.Supp.2d 217 (D. Mass. 2009 (No. 03-CV-11661-NG, 07-CV-11446-NG) (Finding defendant liable for $22,400 per act of willful infringement for sharing music files using peer-to-peer technology); *Arista Records LLC v. Furia Sonidera, Inc.*, No. 05-CV-5906, 2007 WL 922406, at *3 (E.D.N.Y. March 26, 2007) (Awarding $10,000 per sound recording infringed).

Considering Defendants' willful and extensive infringement of Elohim's copyright interests, and to deter repeat offenders like them, as well as similar establishments as intended by the Copyright Act, Elohim request that the Court award the maximum of $150,000 for each of the 16 Registered Compositions infringed at the respective establishments.   Maximum statutory damages are warranted because Defendants' stock in trade is music.   Indeed, this is not a situation where the Defendants copy Registered Compositions to enjoy the music for themselves, which in and of itself would constitute willful infringement.   Their conduct is much worse.   Defendants knowingly and selfishly profit at Elohim's and its songwriters' expense by making the Registered Compositions available for customers to use again and again and they charge their customers for access to and the public performance of the Registered Compositions.   Defendants are for all intents and purposes depriving Elohim and its songwriters from making a living. Elohim's damages are as follows:

- Flower Karaoke (6 Registered Compositions): $900,000
- Happy Karaoke (7 Registered Compositions): $1,050,000
- Music Box K-TV (10 Registered Compositions): $1,500,000
- Noblesse Karaoke (8 Registered Compositions): $1,200,000
- The King Karaoke (9 Registered Compositions): $1,350,000
- CEO Business Club (2 Registered Compositions): $300,000
- Sagwa Namoo (2 Registered Compositions): $300,000
- I Luv Luxury Room Café (1 Registered Composition): $150,000
- Base Karaoke (10 Registered Compositions): $1,500,000
- Open Karaoke (8 Registered Compositions): $1,200,000
- Christmas Karaoke (5 Registered Compositions): $750,000
- Wow Karaoke (11 Registered Compositions): $1,650,000
- Gagopa Karaoke (9 Registered Compositions): $1,350,000

With respect to the Defaulted Defendants (*i.e.*, Norae Hahnun Jib, Sweetie, and G S Global), Elohim's damages are for the unauthorized use of 16 Registered Compositions. Thus, $150,000 x 16 songs = $2,400,000 statutory damages for each Defaulted Defendant.

## VII. ELOHIM SHOULD BE AWARDED REASONABLE ATTORNEY'S FEES AND COSTS UPON PREVAILING AT TRIAL

Section 505 of the Copyright Act gives the Court explicit authority to grant the recovery of full costs and reasonable attorney's fees to the prevailing party. 17 U.S.C. §505. Upon prevailing Elohim should be awarded its attorney's fees incurred in this action subject to a fee motion.

## VIII. INTEREST ON THE JUDGMENT SHOULD BE AWARDED

"Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. §1961(a); see also *Autodesk, Inc. v. Flores*, 2011 WL 337836 (N.D. Cal. Jan. 31, 2011) (awarding post-judgment interest in a default judgment proceeding). Interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. §1961.

## IX. CONCLUSION

Based upon the foregoing, Elohim respectfully requests that the Court enter judgment for Elohim and against Defendants as follows: (i) Flower Karaoke (6 Registered Compositions): $900,000; (ii) Happy Karaoke (7 Registered Compositions): $1,050,000; (iii) Music Box K-TV (10 Registered Compositions): $1,500,000; (iv) Noblesse Karaoke (8 Registered Compositions): $1,200,000; (v) The King Karaoke (9 Registered Compositions): $1,350,000; (vi) CEO Business Club (2 Registered Compositions): $300,000**;** (vii) Sagwa Namoo (2 Registered Compositions): $300,000; (viii) I Luv Luxury Room Café (1 Registered Composition): $150,000; (ix) Base Karaoke (10 Registered Compositions):

$1,500,000; (x) Open Karaoke (8 Registered Compositions): $1,200,000; (xi) Christmas Karaoke (5 Registered Compositions): $750,000; (xii) Wow Karaoke (11 Registered Compositions): $1,650,000; (xiii) Gagopa Karaoke (9 Registered Compositions): $1,350,000; (xiv) Norae Hahnun Jib (16 Registered Compositions): $2,400,000; (xv) Sweetie (16 Registered Compositions): $2,400,000; and (xvi) G S Global (16 Registered Compositions): $2,400,000.

Elohim further requests that the Court award Elohim interest on the Judgment and attorney's fees subject to a post-trial motion.

Finally, Elohim requests that the Court enter a permanent prohibiting Defendants from performing, or causing to be performed, any of the Registered Compositions.

DATED: June 23, 2023                              TESSER | GROSSMAN  LLP


_____
BRANDON TESSER
ROBERT PAREDES
Attorneys for Plaintiff,
Elohim EPF USA, Inc.